**UNITED STATES v. KIRBY.**

No. 275, Docket 21270.

United States Court of Appeals
Second Circuit.

Argued June 15, 1949.

Decided August 1, 1949.

**102**

William R. Perdue, Jr., New York City, for appellants.

John F. X. McGohey, U. S. Atty., New York City (Bruno Schachner, Roy M. Cohn and Daniel H. Greenberg, Assistant United States Attorneys, New York City, of counsel), for appellee.

Before SWAN and CHASE, Circuit Judges, and SMITH, District Judge.

CHASE, Circuit Judge:

The appellants were tried by jury on an indictment charging them and one Burton with having in their possession in violation of Title 18 U.S.C.A. § 317 [now § 1708] the contents of a letter, that is to say, a check for twenty dollars, which they knew had been stolen from the mails. Burton pleaded guilty and testified for the government. Both the others were convicted and all have been sentenced, the appellants being imprisoned.

There was evidence sufficient to have enabled the jury to find the following facts:— On July 26, 1948 a letter containing an unemployment insurance check payable to the order of Lionel Pagson was mailed at Albany, N. Y., addressed to him at his residence at 11 East 115th St., New York City. Pagson did not receive the letter and check. He was receiving such checks weekly, usually on each Tuesday morning, and when he went to his mail box on the morning of Tuesday July 28, 1948, at the time when he expected to receive this check, he found that the mail box had been forced open and, though other mail was in it, the expected letter was not.

Later on that day appellant Joseph Kirby went to Burton's room at 100 West 118th St., New York City with an unopened letter which turned out to be the letter containing Pagson's check. Kirby asked Burton to "put on a digit for him." Burton declined and told Kirby he would have nothing to do with stolen checks. Kirby asked permission to leave the letter until the next morning and was told to put it on the mantel in Burton's room. He did so and left. After Kirby had gone Burton looked at the envelope and found beside it a brass identification plate. The envelope was of the window type which made use of the name and address written on the check for addressing the letter. He noticed that both the envelope and the plate bore the name "Lionel something" and that the spelling of the name on the plate was not identical with that in the address of the letter.

The next morning Joseph Kirby and appellant Gloria Kirby, who testified that she was Joseph's "common law wife," called at Burton's room and he gave the letter

and plate to Gloria. She then opened the envelope and removed the above mentioned check. Burton at her request forged the payee's name on the back of it by way of endorsement after Joseph had declined to do that for the stated reason that his hand was too shaky. Burton also filled out an identification card in accordance with Gloria's directions. Gloria noticed the discrepancy between the spelling of the name on the brass plate and the payee's name on the check and told Joseph he would have to get another plate made. The three then left in a taxi and went to a store where Joseph was left to order the new plate. Gloria and Burton went on in the taxi and stopped a few blocks away on the same street. She soon left the taxi but returned shortly with the news that Red, Red Williams being another name for Joseph Kirby, was being trailed and that she was to get the plate at the store where he had ordered it made. She did so and later she put the check, the brass plate and the identification card in Burton's wallet which he produced at her request and returned to his pocket. The two then went together to a nearby grocery where she made some purchases and then asked if a check would be cashed. She motioned to Burton who came to her from the rear of the store and handed her his wallet from which she took the check, the brass plate and the identification card which Burton had filled in and gave all three to the clerk, Burton saying in reply to a question that he had indorsed the check. At this point Burton and Gloria were arrested by a Post Office Inspector. Gloria signed a written statement, after questioning by the officers, in which she admitted that she knew that the check had been stolen from the mails. She testified at the trial that she didn't know the check had been stolen until she was arrested and that when she signed the statement it contained no mention of Red Williams who according to it as introduced in evidence went with her to Burton's room, and later ordered the new brass plate at the store where she got it.

Three claimed errors are presented. The first is in the charge; the second is the insufficiency of the evidence; and the third is that the sentences exceeded the maximum which could lawfully have been imposed.

■ The judge charged the jury that the defendants were accused of possessing a check "which check they knew to have been stolen from a letter in the mail" and further that, "We are not concerned in this indictment with who stole the letter; we are not concerned with who stole the check." He alluded to the accusation again as one "that they unlawfully possessed the contents of a letter" and read to the jury the following as part of the above statute: "Whoever shall unlawfully have in his possession any letter, postcard, package, bag, or mail or any article or thing contained therein which had been stolen, taken, embezzled or abstracted as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted, shall be guilty of a crime."

It is not a meticulously exact quotation but the omitted words do not obscure its meaning and we think that the method chosen for informing the jury that the defendants were accused of possessing a letter and its contents with knowledge that the letter with its contents had been stolen from the mails made it sufficiently plain to leave no fair doubt that the jury understood the nature of the crime charged.

■ It fairly appears also that there was sufficient evidence from which the jury could have inferred that both defendants knew that the letter had been stolen from the mails. Joseph had it in his possession within a few hours after the mail box, in which it normally would have been placed upon delivery through the mails to the addressee, had been broken into and the conduct of both defendants in respect to the letter and check would strongly tend to show their guilty knowledge of its theft from the mails. The real difficulty is whether the jury was allowed the requisite free and fair opportunity to decide for itself whether or not such an inference should be drawn.

■ The jury was told that if the testimony of the government's witnesses was believed "then of course you shall find these defendants guilty" but if "you disbelieve

the testimony of all these witnesses and believe the testimony of Gloria Kirby, then you have no alternative but to find the defendants not guilty." And a little later the judge also charged, "Any opinion that I may have in this case is not binding upon you in the slightest. You are the sole judges of the facts and you must decide the case on the basis of the evidence as it was submitted." Seldom, if ever, may the basis for a verdict accurately be put upon such a broad generalization by way of a blanket contrast between the entire testimony given by witnesses for the respective parties. It is not to be commended, but the issue for us is not whether this is a preferred example of a charge but whether, in the circumstances, there was reversible error. It is possible to construe the words "then of course you shall find these defendants guilty" as a mandatory instruction that as a matter of law they were guilty if evidence was believed which, as to their knowledge of the theft of the letter from the mails, was wholly circumstantial. The acceptance of that testimony as true did not, of course, require the jury to draw an inference of guilty knowledge and only laid the basis for such an inference. But when that language is read, as it should be, in the light of the other parts of the charge it seems adequately clear that the jury must have understood that the judge was but commenting upon the sufficiency of testimony which, if the jury believed it, would justify a verdict of guilty. It borders on the fantastic to believe that the jury could have understood otherwise than that whether the defendants knew the letter and check had been stolen from the mails was left for its determination as a matter of fact upon all the evidence no matter what the judge may have thought about it. And this conclusion is fortified by the fact that defendants' trial attorney neither took an exception nor suggested any changes in the language used.

When the issues have on the whole been left to the jury in substantial compliance with the applicable law, we do not notice an error which the judge has not been asked to correct. United States v. Monroe, 2 Cir., 164 F.2d 471; United States v. Vasilaky, 2 Cir., 168 F.2d 191; Johnson v. United States, 318 U.S. 189, 200, 63 S.Ct. 549, 87 L.Ed. 704; Rule 52(a), Federal Rules Criminal Procedure, 18 U.S.C.A. It is, of course, otherwise where plain errors do affect substantial rights. Rule 52(b), Fed.R.Cr.Pro.; Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330.

We find no error in the sentences, which were imprisonment of three years and two and one half years respectively. It is true that Title 18 U.S.C.A. § 1708 was in effect when they were imposed and that it limits imprisonment for this offense to not more than one year if the article does not have a value or a face value of more than one hundred dollars, but Title 18 U.S.C.A. § 317, which was repealed, had been in effect when the alleged crime was committed. The effect of its repeal is to be determined with due regard for Title 1 U.S.C.A. § 109 which provides that no penalty, forfeiture or liability incurred under a repealed statute shall be affected by the repeal "unless the repealing Act shall so expressly provide." The repealing act, Sec. 21 of the Act of June 25, 1948, 62 Stat. 862, in this instance not only did not so expressly provide but expressly provided that "Any rights or liabilities now existing * * * shall not be affected by this repeal."

Judgment affirmed.