UNITED STATES of America,
Appellee,

v.

Raimundo HUGUET, Defendant-Appellant.

No. 1001, Docket 73–1101.

United States Court of Appeals,
Second Circuit.

Argued June 18, 1973.

Decided July 9, 1973.

Helena Pichel Solleder, New York City, for defendant-appellant.

Nicholas Figueroa, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John W. Nields, Jr., Asst. U. S. Atty., on the brief), for appellee.

Before FRIENDLY, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

After a one-day, non-jury trial in the United States District Court for the Southern District of New York before Marvin E. Frankel, J., Raimundo Huguet was convicted of selling cocaine not pursuant to a written order form, in violation of 26 U.S.C. § 4705(a), and conspiring to violate the federal narcotics laws, 21 U.S.C. §§ 173, 174. Judge Frankel sentenced Huguet to concurrent five-year sentences on each count, on the assumption that a five-year minimum sentence was mandatory. On this appeal, Huguet raises a number of points: Most relate to the trial or proceedings leading up to it; one goes to the question of Huguet's eligibility for parole. For reasons set forth below, we affirm.

I

The judge, as trier of fact, was entitled to find the following from the evidence: In April 1969, an informer introduced Special Agent Dennis Nargi to Huguet, a merchant seaman, as part of an undercover investigation of the illegal importation of narcotics. At Nargi's request, Huguet promptly agreed to supply some cocaine to the agent for $2,200; they met again a few days later, and a few days after that the transaction took place between them.[1] Appellant claims that as a matter of law he was entrapped by Nargi and the informant, who allegedly had to entreat him repeatedly to procure some cocaine. However, there is no need to summarize in detail the conflicting stories of appellant and the agents because the trial judge, as he surely had the power to do, found Huguet's version "totally incredible." Huguet claims that there was no

evidence of his predisposition to sell the cocaine, but the record belies this—e.g., Huguet displayed no hesitation in agreeing to sell, and during the transaction he used a term of the trade (the cocaine "could take at least a two to one cut").

Similarly unimpressive are appellant's claims that there was no proof that the cocaine had been imported or that he had been aware of such importation.[2] Evidence was presented that South America is the main source of illegally imported cocaine, that Huguet was a merchant seaman, that he had recently returned from a voyage on a ship that made frequent visits to South America, that Huguet had told Nargi that even though he would not be shipping out for two weeks, he could get Nargi "an ⅛ of a kilo of cocaine," and that the next time he shipped out he would be able to bring back at least a half kilogram. This was ample to support a finding that the cocaine sold by Huguet to Nargi had been illegally imported and that Huguet had known of this fact. Huguet argues that use of the presumption contained in former 21 U.S.C. § 174 was improper, distinguishing United States v. Gonzalez, 442 F.2d 698, 705 (2d Cir.) (en banc), cert. denied, 404 U.S. 845, 92 S.Ct. 146, 30 L. Ed.2d 81 (1971), and United States v. Vargas, 443 F.2d 901 (2d Cir. 1971). But there is no indication that the judge, as trier of fact, used the presumption, and good reason to believe that he did not: The evidence, as we have noted, was more than sufficient on these issues without resort to the presumption, the issue whether the presumption could be used was not raised in the trial court, and the judge never referred to the presumption. Under these circumstances, we see no need to consider even the alternative procedure

---

1. Accompanying Huguet to that final meeting was one Jose Garcia, who was indicted along with Huguet in February 1970 and convicted on both counts two months later. The conviction was affirmed in open court on November 11, 1970. Huguet's trial was held much later for reasons indicated in the text, infra.

2. Even if true, this contention would not affect the validity of appellant's conviction on the first count, as importation and knowledge thereof are not required for a violation of 26 U.S.C. § 4705(a).

mentioned in *Vargas* of remanding to the trial judge "with directions to make a finding concerning knowledge of illegal importation without reliance on the statutorily permitted inference." 443 F.2d at 903. Huguet claims that the absence of special findings supports the conclusion that the presumption was used.[3] On this record, the contrary conclusion is justified.[4]

Huguet also contends that the "unreasonable" delay between his indictment and trial violated this court's Rules Regarding Prompt Disposition of Criminal Cases. As indicated, although Huguet was indicted in February 1970, he was not tried until November 1972. The record reveals that a bench warrant for his arrest was issued shortly after the indictment had been filed, and was returned unexecuted the following month; Huguet was finally arrested in August 1972. Since in the interim codefendant Garcia was promptly tried and convicted, see note 1, supra, it appears that the delay in Huguet's trial resulted from the Government's inability to find him. Huguet argues to us that the Government could easily have located him at all times because he had been working since 1969 as a licensed

taxicab driver, and that there was no proof that he knew of the indictment or the outstanding warrant for his arrest. The issue of pre-trial delay was not raised in the district court, and thus the Government never had an opportunity to relate what its efforts had been to find Huguet, and the trial judge, of course, never passed on that issue. Under the circumstances, we decline to consider the matter.[5]

## II

We come now to the only potentially substantial question in the case: whether the no-parole requirement of 26 U.S.C. § 7237(d)[6] will prevent Huguet from obtaining parole under the general parole statute, 18 U.S.C. § 4202.[7] Since section 7237(d) was repealed as of May 1, 1971 by the Comprehensive Drug Abuse Prevention and Control Act (Drug Control Act), §§ 1101(a)(2), (b)(4)(A), 84 Stat. 1291, 1292, appellant argues that section 7237(d) should not bar parole for him when he becomes eligible for such treatment after service of one-third of his sentence. The Government says that since appellant's crime was committed under the old narcotics law, section 7237(d) is still applicable

---

3. Huguet, of course, could have requested special findings under Fed.R.Crim.P. 23(c), but did not do so.

4. We note in passing that the judge who tried the case against Huguet's co-defendant, Garcia, did specifically find that the cocaine had been illegally imported and that Garcia had known of this fact. Transcript of April 3, 1970, at 95, United States v. Garcia, 70 Cr. 78 (S.D.N.Y. 1970) (findings of Judge Ryan). See note 1 supra.

5. Huguet also argues that the trial judge erred ·in overruling his objection to the Government's cross-examination of him concerning his contacts with Garcia after April 10, 1969. The ruling was not an improper exercise of the trial judge's discretion.

6. Upon conviction—
    (1) of any offense the penalty for which is provided in subsection (b) of this section, subsection (c), (h), or (i) of section 2 of the Narcotic Drugs Im-

port and Export Act, as amended, or such Act of July 11, 1941, as amended,

. . .

\*       \*       \*       \*       \*

the imposition or execution of sentence shall not be suspended, probation shall not be granted and in the case of a violation of a law relating to narcotic drugs, section 4202 of title 18, United States Code, . . . shall not apply.
The five-year mandatory minimum for violation of 26 U.S.C. § 4705(a) was established by 26 U.S.C. § 7237(b). The same required term of imprisonment for violation of 21 U.S.C. §§ 173, 174 was included in § 174.

7. A Federal prisoner, other than a juvenile delinquent or a committed youth offender, wherever confined and serving a definite term or terms of over one hundred and eighty days, whose record shows that he has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of such term or terms . . .

to him under either the savings clause of the Drug Control Act itself,[8] or the general federal statutory savings clause,[9] or both. At first blush, the point seems largely foreclosed by our decisions in United States v. De Simone, 468 F.2d 1196 (2d Cir. 1972), cert. denied, 410 U.S. 989, 93 S.Ct. 1499, 36 L.Ed.2d 188 (1973), and United States v. Ross, 464 F.2d 376 (2d Cir. 1972), particularly the former. Appellant asserts, however, that in those cases we were concentrating upon the availability of early parole as an option to the sentencing judge under 18 U.S.C. § 4208(a), which appellant labels "judicial" parole, rather than upon "administrative" parole by the Parole Board, for which a prisoner becomes eligible when he has served one-third of his sentence. 18 U.S.C. § 4202; see note 7 supra.

It is true that neither in *De Simone* nor in *Ross* had the appellant come close to serving one-third of his sentence, so that, strictly speaking, consideration of the issue may have been premature. But our words in *De Simone* were directed to the point appellant now raises, see 468 F.2d at 1198–1199, and, in view of the later denial of certiorari in that case, we normally would not lightly disregard our prior observations, whether or not they be characterized as dicta, obiter or otherwise. The foregoing assumes, however, that the slate is otherwise clean, whereas in this instance there is a rather large entry upon it in the form of United States v. Bradley, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), to which we now turn.

In *Bradley*, decided four months after *De Simone*, a majority of the Court emphasized the very distinction appellant presses upon us, holding that section 1103(a) of the Drug Control Act preserves the limitations of § 7237 on decisions made at the time of sentence for violation of the former drug laws, e. g., whether to suspend sentence, or utilize probation, or impose a prison term. 93 S.Ct. 1151. As to these determinations, the portions of section 7237 that barred suspension of sentence or use of probation and that required a minimum five-year prison term were still effective. Thus, the sentencing judge still could not "make early parole available under § 4208(a)." Id. The Court took pains to point out, however, that whether the judge could, under section 4208(a), "specify at the time of sentencing that the offender may be eligible for early parole," id., 93 S.Ct. at 1155, was "a rather different matter" from the "availability of parole under the general parole statute, 18 U.S.C. § 4202," at a later time:

> The decision to grant parole under § 4202 lies with the Board of Parole, not with the District Judge, and must be made long after sentence has been entered and the prosecution terminated. Whether § 1103(a) or the general savings statute, 1 U.S.C. § 109, limits that decision is a question we cannot consider in this case.

93 S.Ct. at 1156 & n. 6. In light of the Court's ruling, any previous expressions of ours on this subject cannot be regarded as controlling.

For the same reasons, we have concluded that we cannot now decide the issue. At no time in the proceedings before Judge Frankel was the question of "administrative" parole considered. The judge, sua sponte, raised the issue whether a minimum sentence of five years was mandatory, and concluded that under the law in this circuit it was,

---

8. Prosecutions for any violation of law occurring prior to the effective date of section 1101 [repealing, inter alia, 21 U.S.C. §§ 173, 174, 26 U.S.C. §§ 4705, 7237] shall not be affected by the repeals or amendments made by such section . . . or abated by reason thereof.

Drug Control Act § 1103(a), 84 Stat. 1294.

9. The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

a view later confirmed in *Bradley*. The judge also made clear that even if that were not so, Huguet deserved "some substantial term of imprisonment" and that it did not necessarily follow that in such a case the judge would impose less than the five-year term already meted out to co-defendant Garcia,[10] since Huguet was "probably more culpable." It seems clear, then, that even "judicial" parole under 18 U.S.C. § 4208(a) was not considered and that the issue of subsequent "administrative" parole under 18 U.S.C. § 4202 was not raised at all, as under *Bradley* it could not have been. The Government suggests in its brief that Huguet be required to bring an action against the Parole Board "should it refuse to consider him for parole after one-third of his sentence has expired." We think the suggestion a good one, although we express no view as to whether Huguet need wait that long.[11]

Judgment affirmed.

---

10. See note 1 supra.

11. We are informed that appellant has filed a motion under Fed.R.Crim.P. 35 in the district court, seeking an order specifying that he be "considered a Parole eligible narcotics offender," and that no disposition of that motion has yet been made. Whether such a motion for modification of "sentence" is a proper vehicle for consideration of the availability of "administrative" parole is not before us on this appeal.