# WARDEN, LEWISBURG PENITENTIARY *v.* MARRERO

No. 73–831.  Argued April 29, 1974—Decided June 19, 1974

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, POWELL, and REHNQUIST, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which DOUGLAS and MARSHALL, JJ., joined, *post,* p. 664.

*Deputy Solicitor General Lafontant* argued the cause for petitioner. With her on the brief were *Solicitor General Bork, Assistant Attorney General Petersen, Harriet S. Shapiro,* and *Jerome M. Feit.*

*John J. Witmeyer III,* by appointment of the Court, 416 U. S. 979, argued the cause for respondent *pro hac vice.* With him on the brief were *Stewart Dalzell* and *Harry C. Batchelder, Jr.*[*]

MR. JUSTICE BRENNAN delivered the opinion of the Court.

A now-repealed statute, 26 U. S. C. § 7237 (d),[1] provided, *inter alia,* that certain narcotics offenders sentenced to mandatory minimum prison terms should be ineligible for parole under the general parole statute, 18 U. S. C.

---

[*]*Joseph Onek* and *Ann K. Macrory* filed a brief for the Washington Lawyers' Committee for Civil Rights Under Law as *amicus curiae* urging affirmance.

[1] Title 26 U. S. C. § 7237 (d) (1964 ed. and Supp. V) provided: "Upon conviction—

"(1) of any offense the penalty for which is provided in subsection (b) of this section, subsection (c), (h), or (i) of section 2 of the Narcotic Drugs Import and Export Act, as amended, or such Act of July 11, 1941, as amended, or

"(2) of any offense the penalty for which is provided in subsection (a) of this section, if it is the offender's second or subsequent offense,

"the imposition or execution of sentence shall not be suspended, probation shall not be granted, section 4202 of title 18 of the United States Code shall not apply, and the Act of July 15, 1932 (47 Stat. 696; D. C. Code 24–201 and following), as amended, shall not apply."

§ 4202.[2]   Section 7237 (d) was repealed, effective May 1,
1971, 84 Stat. 1292, by the Comprehensive Drug Abuse
Prevention and Control Act of 1970, which makes parole
under § 4202 available for almost all narcotics offenders.
The question for decision in this case is whether the
parole ineligibility provision of 26 U. S. C. § 7237 (d)
survives the repealer, so that a narcotics offender who has
served more than one-third of a sentence imposed before
May 1, 1971, remains ineligible for parole consideration
under 18 U. S. C. § 4202.

Respondent was convicted of narcotics offenses and, as
a second offender, was sentenced before May 1, 1971, to
concurrent terms of 10 years' imprisonment on each of
two counts.   450 F. 2d 373, 374–375 (CA2 1971).[3]   On
February 24, 1972, respondent sought habeas corpus in the
United States District Court for the Middle District of
Pennsylvania, claiming that, since 26 U. S. C. § 7237 (d)
had been repealed, he should be eligible for considera-
tion for parole under 18 U. S. C. § 4202 when one-third
of his sentence had been served.   The District Court
denied relief on the ground that the prohibition
on parole eligibility of 26 U. S. C. § 7237 (d)

---

[2] Title 18 U. S. C. § 4202 provides:

"A Federal prisoner, other than a juvenile delinquent or a com-
mitted youth offender, wherever confined and serving a definite term
or terms of over one hundred and eighty days, whose record shows
that he has observed the rules of the institution in which he is
confined, may be released on parole after serving one-third of such
term or terms or after serving fifteen years of a life sentence or of a
sentence of over forty-five years."

[3] Respondent was convicted of violating 21 U. S. C. § 173 (1964
ed.) and 26 U. S. C. §§ 4701, 4703, 4704 (a), and 4771 (a) (1964 ed.).
His sentences were imposed under 21 U. S. C. § 174 and 26 U. S. C.
§ 7237 (a).   Section 174 explicitly incorporated the provisions' of
26 U. S. C. § 7237 (d), which was directly applicable to the sen-
tence imposed under § 7237 (a).

had been preserved by § 1103 (a) of the 1970 statute [4] and by 1 U. S. C. § 109.[5] 347 F. Supp. 99. The Court of Appeals for the Third Circuit reversed, holding that neither § 1103 (a) of the 1970 statute nor 1 U. S. C. § 109 continued the prohibition on eligibility for parole consideration in 26 U. S. C. § 7237 (d). 483 F. 2d 656 (1973).[6] We granted certiorari to resolve a conflict among the Courts of Appeals.[7] 414 U. S. 1128 (1974). We agree with the District Court and reverse the judgment of the Court of Appeals.

*Bradley* v. *United States,* 410 U. S. 605, 611 (1973), expressly reserved decision of the question now before us.

---

[4] Section 1103 (a) provides:

"Prosecutions for any violation of law occurring prior to the effective date of [the Act] shall not be affected by the repeals or amendments made by [it] . . . or abated by reason thereof."

[5] Title 1 U. S. C. § 109 provides in relevant part:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

[6] The mandate was issued before the Circuit Justice signed a stay. The stay was treated, however, as staying all proceedings under the mandate. Respondent's motion to dismiss the writ of certiorari as moot is therefore denied.

[7] The Courts of Appeals for the Second and Tenth Circuits have held that narcotics offenders are ineligible for parole. *United States* v. *De Simone,* 468 F. 2d 1196 (CA2 1972) (but see *United States* v. *Huguet,* 481 F. 2d 888 (CA2 1973)); *Perea* v. *United States Board of Parole,* 480 F. 2d 608 (CA10 1973). In addition to the Court of Appeals for the Third Circuit, in this case, the Courts of Appeals for the Fourth, Fifth, Seventh, and District of Columbia Circuits have held that narcotics offenders are eligible for parole. See *Alvarado* v. *McLaughlin,* 486 F. 2d 541 (CA4 1973); *Amaya* v. *United States Board of Parole,* 486 F. 2d 940 (CA5 1973); *United States* v. *McGarr,* 461 F. 2d 1 (CA7 1972); *United States* v. *Marshall,* 158 U. S. App. D. C. 283, 485 F. 2d 1062 (1973).

*Bradley* involved the conviction and sentencing after May 1, 1971, of offenders who committed narcotics offenses before that date. We held that sentencing is a part of the concept of "prosecution" and therefore that the provision of § 1103 (a) of the 1970 Act that "[p]rosecutions for any violation of law occurring [before May 1, 1971] shall not be affected" by the repeal of 26 U. S. C. § 7237 (d), barred the sentencing judge from suspending the sentences of, or granting probation to, the *Bradley* petitioners and also barred him from making them eligible for early parole, before they had served one-third of their sentences, under 18 U. S. C. § 4208 (a).[8] Although stating in a footnote that "[t]he decision to grant parole under [18 U. S. C.] § 4202 lies with the Board of Parole, not with the District Judge, and must be made long after sentence has been entered and the prosecution terminated," we concluded that "[w]hether § 1103 (a) or the general saving statute, 1 U. S. C. § 109, limits that decision is a question we cannot consider in this case." 410 U. S., at 611 n. 6.

## I

We hold that § 1103 (a) bars the Board of Parole from considering respondent for parole under 18 U. S. C.

---

[8] Title 18 U. S. C. § 4208 (a) provides:

"(a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine."

§ 4202. In concluding in *Bradley* that ineligibility for early parole under 18 U. S. C. § 4208 (a) was part of the "prosecution," we reasoned that, since a District Judge's decision to make an offender eligible for early parole is made at the time of entering a judgment of conviction, the decision was part of the sentence and therefore also part of the "prosecution." 410 U. S., at 611.

Similarly, a pragmatic view of sentencing requires the conclusion that parole eligibility under 18 U. S. C. § 4202 is also determined at the time of sentence. Since, under § 4202, an offender becomes eligible for parole after serving one-third of his sentence, see n. 2, *supra,* parole eligibility is a function of the length of the sentence fixed by the district judge. · Although, of course, the precise time at which the offender becomes eligible for parole is not part of the sentence, as it is in the case of § 4208 (a), it is implicit in the terms of the sentence. And because it could not be seriously argued that sentencing decisions are made without regard to the period of time a defendant must spend in prison before becoming eligible for parole, or that such decisions would not be drastically affected by a substantial change in the proportion of the sentence required to be served before becoming eligible, parole eligibility can be properly viewed as being determined—and deliberately so—by the sentence of the district judge. Eligibility for parole under § 4202 is thus determined at the time of sentencing and, under the teaching of *Bradley,* is part of the "prosecution" saved by § 1103 (a).

We therefore reject respondent's argument that our *Bradley* footnote should be read as holding that, because the decision to grant parole under § 4202 is for the Board of Parole, not the trial judge, and is arrived at after the sentence has been entered and the prosecution has come to an end, the parole eligibility decision is not part of the "prosecution" for purposes of § 1103 (a). Apart from

the obvious answer that the Court could not reasonably be thought to have decided in a footnote a question "on which" we said in the text, "we express no opinion," 410 U. S., at 611, respondent's reliance upon the footnote both proves too little and too much. It proves too little, because the fact that the Board of Parole, not the sentencing judge, finally determines whether and when an offender should be released on parole does not undercut our conclusion that the district judge, at the time of sentencing, determines when the offender will become *eligible* for consideration for parole and the Board's action simply implements that determination.[9]  It proves too much, because, if—as the respondent would have it—the proper focus is upon the time at which release on parole is actually granted or denied, the parole decision, whether made under 18 U. S. C. § 4208 (a) or 18 U. S. C. § 4202, is made long after the "prosecution" terminates; for under both provisions, the Board of Parole ultimately decides whether and when the offender is to be released.  But, as previously mentioned, we held in *Bradley* that the district judge's decision to deny early parole under § 4208 (a) was part of the sentence, and therefore part of the "prosecution."

## II

We hold further that the general saving clause, 1 U. S. C. § 109, also bars the Board of Parole from considering respondent for parole.[10]

---

[9] The statement in *Morrissey* v. *Brewer*, 408 U. S. 471, 480 (1972), that "[p]arole arises after the end of the criminal prosecution, including imposition of sentence" was addressed to the decision determining the time of *release* on parole as distinguished from the decision determining *eligibility*.

[10] Respondent argues that, since the 1970 Act contains its own saving clause, § 1103 (a), that specific directive should be read to supersede the general clause § 109.  But only if § 1103 (a) can be said

Congress enacted its first general saving provision, c. 71, 16 Stat. 432 (1871), to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of "all prosecutions which had not reached final disposition in the highest court authorized to review them." *Bradley* v. *United States,* 410 U. S., at 607; see *Bell* v. *Maryland,* 378 U. S. 226, 230 (1964). Common-law abatements resulted not only from unequivocal statutory repeals, but also from repeals and re-enactments with different penalties, whether the re-enacted legislation increased or decreased the penalties. See *Bradley* v. *United States, supra,* at 607–608; *Lindzey* v. *State,* 65 Miss. 542, 5 So. 99 (1888); *Hartung* v. *People,* 22 N. Y. 95 (1860); Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U. Pa. L. Rev. 120, 121–126 (1972). To avoid such abatements—often the product of legislative inadvertence—Congress enacted 1 U. S. C. § 109, the general saving clause, which provides in pertinent part that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute." See n. 5, *supra.* The determinative question is thus whether the prohibition of 26 U. S. C. § 7237 (d) against the offender's eligibility for parole under 18 U. S. C. § 4202 is a "penalty, forfeiture, or liability" saved from release or extinguishment by 1 U. S. C. § 109.[11]

by fair implication or expressly to conflict with § 109 would there be reason to hold that § 1103 (a) superseded § 109. See *Great Northern R. Co.* v. *United States,* 208 U. S. 452, 465–466 (1908). We find no conflict.

[11] The Court of Appeals, relying on statements in opinions of this Court that § 109 is intended to obviate "mere technical abatement[s]," see *Hamm* v. *Rock Hill,* 379 U. S. 306, 314 (1964), held that, since respondent's conviction and sentence would remain intact even if he were released on parole, the purposes of 1 U. S. C. § 109 would

*United States* v. *Reisinger,* 128 U. S. 398 (1888), held that the saving clause's use of the words "penalty," "liability," and "forfeiture" required the conclusion that the clause covered criminal statutes. Those words, the Court found, were "used by the great masters of crown law and the elementary writers as synonymous with the word 'punishment,' in connection with crimes of the highest grade." *Id.,* at 402. Thus, the Court agreed with the construction of the clause by Mr. Justice Miller, as Circuit Justice, in *United States* v. *Ulrici,* 28 F. Cas. 328, 329 (No. 16,594) (CCED Mo. 1875), that those terms "were used by Congress to include all forms of punishment for crime." See 128 U. S., at 402–403. In consequence, the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense. See, *e. g., Jones* v. *United States,* 117 U. S. App. D. C. 169, 327 F. 2d 867 (1963); *United States* v. *Kirby,* 176 F. 2d 101 (CA2 1949); *Lovely* v. *United States,* 175 F. 2d 312 (CA4 1949).

Although the general saving clause does not ordinarily preserve discarded remedies or procedures, see *Hertz* v. *Woodman,* 218 U. S. 205, 218 (1910); *United States* v. *Obermeier,* 186 F. 2d 243, 253 (CA2 1950), the legislative

not be served by applying it to save the no-parole provision of 26 U. S. C. § 7237 (d). 483 F. 2d 656, 663; see *United States* v. *Stephens,* 449 F. 2d 103, 105–106 (CA9 1971). This analysis, it seems to us, begs the relevant question. The no-parole provision of 26 U. S. C. § 7237 (d) was directly incorporated into the sentencing provisions of 21 U. S. C. § 174 and 26 U. S. C. § 7237 (a), see n. 3, *supra,* and if the repeal of 26 U. S. C. § 7237 (d) can be viewed as mitigating respondent's punishment under those sections, his conviction and sentence would not be left intact by the repealer and his prosecution would "technically" abate under the common-law rule. Thus, the appropriate inquiry is whether parole ineligibility is a "penalty, forfeiture, or liability" for his offense that survives the repealer.

history of § 7237 (d) reveals that Congress meant ineligibility for parole to be treated as part of the "punishment" for the narcotics offenses for which respondent was convicted. Section 7237 (d) was enacted as part of the Narcotic Control Act of 1956. The statute embodied congressional acceptance of the approach that effective combat against the contagion of drug addiction required the imposition of severe penalties for certain narcotics offenses. Congress therefore enacted lengthy mandatory minimum sentences as a means of decreasing both drug addiction and trafficking. See, *e. g.*, S. Rep. No. 1997, 84th Cong., 2d Sess., 5 (1956); H. R. Rep. No. 2388, 84th Cong., 2d Sess., 10 (1956). But Congress believed that longer sentences would not achieve the desired results unless the offender remained imprisoned for his full term.

> "In evaluating the effectiveness of the presently prescribed penalties, it must be recognized that special incentives in our penal system serve to decrease the actual time spent in a penal institution under a sentence imposed by a court. The violator is eligible for parole after serving one-third of his sentence. . . . Available data from the Bureau of Prisons, indicates that a narcotics violator actually serves an average of less than two-thirds of the sentence imposed by the court. This mitigation of sentence tends to defeat the purposes of [existing legislation] . . . ." *Id.*, at 10–11.

Accordingly, Congress expressly provided in § 7237 (d) that parole under 18 U. S. C. § 4202 would be unavailable for narcotics offenders.

There are additional reasons for believing that the no-parole provision is an element of respondent's "punishment." First, only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole. See *United States* v. *Ross,*

464 F. 2d 376, 379 (CA2 1972); *United States* v. *De Simone,* 468 F. 2d 1196, 1199 (CA2 1972). For the confined prisoner, parole—even with its legal constraints—is a long step toward regaining lost freedom.[12] An observation made in somewhat different context is apt:

> "It may be 'legislative grace' for Congress to provide for parole but when it expressly removes all hope of parole upon conviction and sentence for certain offences, . . . this is in the nature of an additional penalty." *Durant* v. *United States,* 410 F. 2d 689, 691 (CA5 1969).

Second, a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the *ex post facto* clause of Art. I, § 9, cl. 3, of the Constitution, of whether it imposed a "greater or more severe *punishment* than was prescribed by law at the time of the . . . offense," *Rooney* v. *North Dakota,* 196 U. S. 319, 325 (1905) (emphasis added). See *Love* v. *Fitzharris,* 460 F. 2d 382 (CA9 1972); cf. *Lindsey* v. *Washington,* 301 U. S. 397 (1937); *Holden* v. *Minnesota,* 137 U. S. 483, 491–492 (1890); *Calder* v. *Bull,* 3 Dall. 386, 390 (1798); *United States ex rel. Umbenhowar* v. *McDonnell,* 11 F. Supp. 1014 (ND Ill. 1934).

Thus, at least where, as in the case of respondent's narcotics offenses, Congress has barred parole eligibility

---

[12] In *Morrissey* v. *Brewer,* 408 U. S., at 482, in determining that parole may not be revoked without affording the parolee procedural due process, we observed:

"The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. . . . Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison." (Footnote omitted.)

as a punitive measure, we hold that the no-parole provision of § 7237 (d) is a "penalty, forfeiture, or liability" saved by § 109.

## III

Respondent emphasizes that Congress completely changed its approach to regulation of narcotics offenses in the 1970 Act, jettisoning the retributive approach of the 1956 law in favor of emphasis in the 1970 Act upon rehabilitation of the narcotics offender. He argues that, in light of this basic change, little purpose is served by denying respondent eligibility for parole, indeed that such denial frustrates the current congressional goal of rehabilitating narcotics offenders.

Undeniably this argument has force, but it is addressed to the wrong governmental branch. Punishment for federal crimes is a matter for Congress, subject to judicial veto only when the legislative judgment oversteps constitutional bounds. See *Gore* v. *United States,* 357 U. S. 386, 393 (1958); *Bell* v. *United States,* 349 U. S. 81, 82 (1955). Section 1103 (a) of the 1970 Act and 1 U. S. C. § 109 saved from repeal the bar of parole eligibility under § 7237 (d), and, however severe the consequences for respondent, Congress trespassed no constitutional limits.

The judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

The Court holds that the no-parole provision of the repealed statute, 26 U. S. C. § 7237 (d) (1964 ed. and Supp. V), is saved by both the general saving clause, 1 U. S. C. § 109, and the specific saving clause, § 1103 (a), of the 1970 Act. I believe that neither provision can be read to cover postsentencing parole eligibility and I therefore respectfully dissent.

## I

*Section 109.* Parole eligibility, in my view, is not a "penalty" envisioned by, and within the meaning of, the general saving statute, 1 U. S. C. § 109. The purpose and thrust of § 109, the pertinent portion of which was enacted originally in 1871, c. 71, 16 Stat. 432, is to preclude the technical abatement of a prosecution for an offense that was committed before the criminal statute was repealed. *Hamm* v. *Rock Hill,* 379 U. S. 306, 314 (1964). Quite appropriately, this recognizes that, apart from exceptional circumstances,[1] one who violates the criminal law should not escape sanction if, subsequent to the commission of his criminal act, the law happens to be repealed.

This saving statute, however, is not in line with the traditional common-law rule favoring application of existing law. *United States* v. *Chambers,* 291 U. S. 217 (1934); *United States* v. *Tynen,* 11 Wall. 88 (1871). See *United States* v. *Schooner Peggy,* 1 Cranch 103 (1801); *Bradley* v. *Richmond School Board,* 416 U. S. 696 (1974). The statute has never been applied by this Court other than to prevent technical abatement of a prosecution.[2] Those federal courts that have interpreted the statute's reference to "penalty" to include the terms of the sentence have dealt only with the length of the sentence actually imposed. *United States* v. *Kirby,* 176 F. 2d 101 (CA2 1949); *Lovely* v. *United*

---

[1] See, *e. g., Hamm* v. *Rock Hill,* 379 U. S. 306 (1964).

[2] The issue certified and decided in *United States* v. *Reisinger,* 128 U. S. 398 (1888), was only whether a prosecution under a repealed criminal statute survived the repeal. "Penalty" appears to have been used there interchangeably with the concept of criminal liability. See also *United States* v. *Smith,* 433 F. 2d 341 (CA4 1970), cert. denied, 401 U. S. 942 (1971); *United States* v. *Brown,* 429 F. 2d 566 (CA5 1970); *Faubion* v. *United States,* 424 F. 2d 437 (CA10 1970).

*States,* 175 F. 2d 312 (CA4), cert. denied, 338 U. S. 834 (1949); *Duffel* v. *United States,* 95 U. S. App. D. C. 242, 221 F. 2d 523 (1954); *Maceo* v. *United States,* 46 F. 2d 788 (CA5 1931).[3]

In this case, however, we are faced with a decidedly different situation. Respondent Marrero in no way is seeking to avoid punishment for his criminal act, and he is still fully subject to the service of his sentence. What Marrero seeks is merely the opportunity to be *considered* for parole. Eligibility for parole will not free him from his imposed sentence. The decision whether he should be accorded parole lies within the discretion of the Board of Parole. If for any reason the Board feels that parole would not be appropriate for the respondent, it can be denied, and Marrero will remain incarcerated for the term to which he is subject. Moreover, even if parole is deemed appropriate and is granted, respondent still would be subject to the conditions the parole authorities choose to place on his conditional freedom.

As the Fourth Circuit aptly has observed, parole "is not a release of the prisoner from all disciplinary restraint but is rather merely 'an extension of the prison walls'; and the prisoner while on parole remains 'in the legal custody and under the control of' the Parole Board," *United States ex rel. Rowe* v. *Nicholson,* 78 F. 2d 468, 469–470, cert. denied, 296 U. S. 573 (1935); *Alvarado* v. *McLaughlin,* 486 F. 2d 541, 544 (1973). See also

---

[2] In *Kirby* and *Lovely* the Courts of Appeals construed the general saving clause in connection with repealing statutes' saving clauses that provided for the nonabatement of any "rights and liabilities" under the repealed acts. It is interesting to note that all the cases cited by the Court, *ante,* at 661, and petitioner, Brief for Petitioner 16–17, for the proposition that sentence as well as prosecution survives under the general saving clause, were decided in circuits that subsequently rejected the extension sought by petitioner in the present case.

*United States* v. *Marshall*, 158 U. S. App. D. C. 283, 286, 485 F. 2d 1062, 1065 (1973). The "sentence" to be served by respondent is still 10 years, whether or not he is granted parole. Cf. *Anderson* v. *Corall*, 263 U. S. 193 (1923). In short, it is by no means clear to me that respondent Marrero is seeking to be relieved of the obligations of the "sentence" imposed upon him.

By expanding the term "penalty" to include parole ineligibility, rather than restricting it to the sentence imposed, the Court, in my view, misconceives the nature of parole ineligibility and extends § 109 well beyond its prior limits. To say that Congress intended parole ineligibility to be a "penalty" under the repealed statute is merely to state the conclusion. The appropriate question is whether Congress intended parole ineligibility to be the type of "penalty" preserved by the general saving statute. Until today, § 109 has not been read so broadly, and I believe this extension goes beyond the intended narrow anti-abatement reach of § 109. To repeat: § 109 "was meant to obviate mere technical abatement." *Hamm* v. *Rock Hill*, 379 U. S., at 314.

This unprecedented extension of § 109 might be justified, and perhaps made acceptable, if it were possible in any way to conclude that the Court's reading serves to effectuate congressional intent or to promote some valid policy. But the result reached clearly does a disservice in both respects.

As is demonstrated in Part II, *infra,* Congress did not affirmatively intend to save the no-parole provision. And on pure policy grounds, the result reached by the Court is wholly illogical. Presumably, the purposes behind parole ineligibility are to effect a deterrence to the commission of narcotics offenses, and to keep serious drug offenders behind bars for longer periods. By repealing the parole ineligibility provision, Congress rejected any deterrence

rationale that had existed. A person who, on or subsequent to May 1, 1971, might anticipate the commission of a drug offense and who is cognizant of the law, knows that he is eligible for parole under 18 U. S. C. § 4202 after service of one-third of his more-than-180-day sentence. The anomalous effect of the Court's action is that it keeps an inmate who is convicted of an offense committed on April 30, 1971, incarcerated for the full length of his term, while his fellow inmate who committed the identical crime on May 2 and who behaved identically in prison, is eligible for release after one-third the time. Surely, disparate treatment of this kind serves only to frustrate the inmate's sense of justice and to undermine whatever rehabilitative attempts currently are being made.[4]

## II

*Section 1103 (a).* In passing the Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1236, with its specific repealer provisions in §§ 1101 (b)(3)(A) and (b)(4)(A), Congress unequivocally withdrew and rejected the concept of parole ineligibility. It concluded that the criminal process is ill served by a law that removes the incentives and the rehabilitative potential of a parole system. The only reference in the 1970 Act to pre-Act offenders is in the saving provision of § 1103 (a), 84

---

[4] Petitioner concedes that granting parole eligibility presents no institutional problems.

"Neither the Bureau of Prisons nor the Board of Parole believes that it would impede the proper performance of their functions if they were required to consider narcotics offenders convicted under the prior statute eligible for parole under 18 U. S. C. 4202. Such a requirement would not demand the granting of parole to any individual prisoner unless the Board determines that his supervised release from confinement is in the interests of both the prisoner and society." Brief for Petitioner 8.

Stat. 1294, and it precludes abatement only of "prosecutions." Although we pretermitted this precise question in *Bradley* v. *United States,* 410 U. S. 605, 611 n. 6 (1973), the Court clearly distinguished postsentence parole eligibility from the specific terms of the sentence already handed down. I believe this distinction is crucial and that it requires a different result in the instant situation.

In determining whether § 1103(a) bars parole eligibility for pre-Act offenders, the Court should ascertain what Congress intended. While there is no precise legislative history on this question, I think the wording of § 1103(a) and the overall purposes of the 1970 Act preclude the result reached by the Court. Section 1103(a) applies only to "prosecutions." We reached the outer limit of this term in *Bradley.* Certainly the legislative and judicial history of the even broader language of the general saving provision, § 109, hardly supports the extravagant interpretation of § 1103 (a) reached today. In light of the clear history and law under § 109, had Congress wanted to save more than the prosecution itself, it could well have done so in specific terms. Instead, it chose the narrowest possible saving clause. Particularly in light of the fact that the text of the 1970 Act specifically rejects the concept of paroleless sentencing, it is illogical and unwarranted to assume that Congress intended the term "prosecutions" to be read so broadly.

For me there is no ambiguity in § 1103 (a). I would take the limited saving clause at its word. Assuming, *arguendo,* that there is some doubt as to the congressional intent, it is harsh, to say the least, to resolve the doubt in the manner chosen by the Court. In light of the general rule favoring application of existing law, *United States* v. *Chambers,* 291 U. S. 217 (1934), and the general rule favoring construction of ambiguous statutes in favor of criminal defendants, *United States* v. *Bass,* 404 U. S. 336

(1971), I see no other choice than to resolve any doubts in favor of eligibility.

The Court would justify its broad reading of the word "prosecution" by stating that "a pragmatic view of sentencing requires [this] conclusion." *Ante,* at 658. Needless to say, no authority, legal or otherwise, is cited for this proposition other than the majority's own intuition, and I venture to say that none could be cited. Parole eligibility is determined by a parole board at *its* discretion, and the existence of parole eligibility is either guaranteed by statute or, as in the case of the repealed Act, is denied by statute. One thing is clear: the sentencing judge has no explicit control over the determination. Congress has never instructed district courts to assess sentences according to parole eligibility dates and if in fact some judges do this, it hardly justifies this Court's flat conclusion that parole eligibility is "implicit in the terms of the sentence" and is "thus determined at the time of sentencing." *Ibid.*

Whatever else *Bradley* held, it clearly stated that the parole eligibility determination under 18 U. S. C. § 4202 (as opposed to preclusion of early parole in the terms of the sentence, as in *Bradley*) does not lie with the district judge, and the determination is *"made long after sentence has been entered and the prosecution terminated."* 410 U. S., at 611 n. 6 (emphasis added).[5] Even assuming footnote 6 in *Bradley* did not conclusively decide the instant issue, the Court's opinion renders the words of

[5] As the Court notes, *ante,* at 659 n. 9, in *Morrissey* v. *Brewer,* 408 U. S. 471, 480 (1972), we stated that "[p]arole arises after the end of the criminal prosecution, including imposition of the sentence." The fact that the decision might have dealt with release rather than the determination of eligibility does not eliminate the conceptual proposition that parole eligibility is an event separate from sentencing, and I feel that the majority's attempted distinction is not persuasive.

the footnote a nullity. The majority states that we "could not reasonably be thought to have decided in a footnote a question 'on which' we said in the text, 'we express no opinion,'" *ante,* at 659. It then goes on to decide that very issue, relying almost entirely on *Bradley* and concluding that "under the teaching of *Bradley*" ineligibility for parole "is part of the 'prosecution.'" *Ante,* at 658. At the least, *Bradley* precludes the approach taken by the majority. To my mind, it precludes the result reached.

## III

Respondent Marrero does not seek release. He seeks only to be treated in the manner Congress now has recognized as appropriate for all criminal offenders, including those convicted of narcotics violations. If a professional Board of Parole determines that parole is in the best interests of an inmate and of society, Congress has determined that the inmate should be paroled. The Court, in my view, makes a serious mistake in expanding § 109 so drastically, and in interpreting § 1103 (a) contrary to its intent and language, in order to preclude this result. With only one exception,[6] the federal courts of appeals that have considered this issue currently reject the Government's argument.[7] Inasmuch as I believe the Gov-

---

[6] *Perea* v. *United States Board of Parole,* 480 F. 2d 608 (CA10 1973).

[7] *United States ex rel. Marrero* v. *Warden,* 483 F. 2d 656 (CA3 1973) (the instant case); *Alvarado* v. *McLaughlin,* 486 F. 2d 541 (CA4 1973), pet. for cert. pending *sub nom. McLaughlin* v. *Prieto; Amaya* v. *United States Board of Parole,* 486 F. 2d 940 (CA5 1973), pet. for cert. pending; *United States* v. *Marshall,* 158 U. S. App. D. C. 283, 286, 485 F. 2d 1062, 1065 (1973). See *United States* v. *Huguet,* 481 F. 2d 888 (CA2 1973) (question pretermitted). See also *United States* v. *McGarr,* 461 F. 2d 1, 4 (CA7 1972); *United States* v. *Stephens,* 449 F. 2d 103 (CA9 1971). The Second Circuit's earlier decision in *United States* v. *De Simone,* 468 F. 2d 1196

ernment's position here is incorrect, in terms both of the laws and of policy, I would affirm the judgment of the Court of Appeals.

---

(1972), cert. denied, 410 U. S. 989 (1973), cited by the Court, *ante,* at 656 n. 7, was referred to in *Huguet, supra,* and "cannot be regarded as controlling." 481 F. 2d, at 891.