James V. BEL, Jr., et al.

v.

Paul A. CHERNOFF et al.

Civ. A. No. 74–2814–T.

United States District Court,
D. Massachusetts.

March 13, 1975.

George E. Brankey, Boston, Mass., for plaintiffs; James V. Bel, Jr., pro se.

David A. Mills, Asst. Atty. Gen., Chief, Crim. App. Section, Com. of Mass., Dept. of the Atty. Gen., Boston, Mass., for Paul A. Chernoff et al.

Before McENTEE, Circuit Judge, and FREEDMAN and TAURO, District Judges.

## MEMORANDUM AND ORDER

TAURO, District Judge.

This civil action, brought pursuant to 42 U.S.C. § 1983, seeks to enjoin on constitutional grounds the operation of Mass.Gen.Laws Ann. ch. 127, § 133 [1] which requires a prisoner, convicted of certain violent crimes, to serve two-thirds of the sentence imposed before becoming eligible for parole. Persons convicted of crimes not covered by the challenged statute are required to serve only one-third of the sentence imposed before becoming eligible for parole.[2]

Plaintiff is presently confined at Massachusetts Correctional Institution (M.C.I.) at Bridgewater for commission of crimes which fall within the umbrella of the challenged statute. He asserts that its provisions are violative of rights granted him by the Equal Protection and Due Process clauses of the Fourteenth Amendment.

Defendant Paul Chernoff is Chairman of the Massachusetts Board of Parole. Defendant Frank A. Hall is the Commissioner of Corrections for the Commonwealth of Massachusetts. Defendant Charles Gaughan is the Superintendent of M.C.I. Bridgewater.

Since plaintiff seeks to enjoin the operation of a state statute, and in doing so raises a substantial constitutional question, a statutory three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284.[3] Following oral argument, the case was submitted on an agreed statement of facts.

## I

Plaintiff is confined at M.C.I. Bridgewater, having been sentenced on June 30, 1972, to concurrent terms of 5–7 years on charges of unlawful possession of a sawed-off shotgun in violation of Mass.Gen.Laws ch. 269, § 10, and assault with a dangerous weapon in violation of Mass.Gen.Laws ch. 265, § 15B.[4] Plaintiff does not challenge the validity of those convictions in this proceeding. He does challenge, however, the provisions of Mass.Gen.Laws ch. 127, § 133 because its two-thirds parole requirement would make him ineligible for parole, as a mat-

---

1. See Appendix I for text of statute.

2. Mass.Gen.Laws Ann. ch. 127, § 133(b). See Appendix I. Plaintiff challenges all provisions of the statute except section (b).

3. Before arguments on the merits of the case, the court heard and disposed of a number of preliminary motions. Plaintiff's request for certification as a class action was denied. Defendant's motion for abatement of the designation of the three-judge court on the grounds of insubstantiality of the question presented was denied. Consistent with that ruling, defendant's motion to dismiss was also denied. Plaintiff's motion for a preliminary injunction was denied. While plaintiff's constitutional claim was sufficient to require convening a three-judge court,

plaintiff failed to demonstrate that a preliminary injunction pending final decision by this court was warranted. *See, e. g.,* Allison v. Froehlke, 470 F.2d 1123, 1126 (5th Cir. 1972).

4. Credit for jail time previously served made January 26, 1972 the effective date of these sentences. Bel was also sentenced to concurrent terms of 3–5 years for unlawful possession of a firearm in a motor vehicle, Mass.Gen.Laws ch. 269, § 10, and unlawful carrying of a sawed-off shotgun in a motor vehicle, Mass.Gen.Laws ch. 269, § 10. Since the sentences imposed on all counts were concurrent, only the 5–7 year sentences are relevant in determining his parole eligibility date.

ter of right,[5] until May 25, 1975. One-third of plaintiff's minimum sentence had been served as of September 26, 1973.

## II

Plaintiff's basic contention is that all state prisoners, and not just some, should be eligible for parole consideration, as a matter of right, after serving one-third of their sentence. He contends that the existing parole scheme which mandates that he serve two-thirds of his sentence violates the Due Process and Equal Protection clauses of the Fourteenth Amendment, as well as the Eighth Amendment ban on cruel and unusual punishment. He further condemns the statute as being analogous to a Bill of Attainder violative of Article I, § 9, ¶ 3 of the Constitution.

Plaintiff argues that the classification of prisoners into two categories—one for those convicted of violent crimes and a second category for all others—is arbitrary and irrational.

The Commonwealth's position, on the other hand, is that the challenged distinction between categories of prisoners rationally furthers some legitimate, articulated state purpose and, therefore, is permissible. We agree.

█ It is clear that the defendant has the burden of justifying seemingly disparate treatment within a given classification and to do so must establish that "the challenged distinction rationally furthers some legitimate, articulated state purpose." McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973). We feel that the defendant has met this burden. That the challenged statute does in fact further a legitimate state purpose is articulated clearly in its legislative histo-

ry. The statute was one product of a series of recommendations that had been made in the Third Report of the Special Commission on Firearms, Paroles, and Related Matters.[6]

In support of the Commission's recommendations, the Third Report, dated June 29, 1965, noted the following:

The Commission is firmly of the opinion that the well-being of the public is and ought to be of paramount concern and that it is crimes of violence against the person which have caused them the most worry and rendered them the most fearful. Consequently we feel that a strong distinction must be made between such crimes of violence against the person and other crimes committed against society, and that the laws governing the release of those convicted and sentenced for crimes of violence against the person must be more strict and fully enforced.

It is difficult to imagine more legitimate or laudable purposes for state action than those of enhancing public safety and increasing public confidence in the laws and institutions which have such a pronounced effect on their safety. The history of the challenged statute demonstrates a legislative finding that crimes of violence are matters of the greatest public concern and that stricter laws governing the release of those convicted for crimes of violence must be enacted. The challenged statute is an effort to meet the mandate of these legislative findings. In its establishment of two classifications of criminal activity —violent and non-violent—with respect to parole eligibility, the legislature has labeled the commission of violent crimes as being a high risk proposition for those who would live outside the law.

---

5. The statute gives the Board of Parole the power, upon the written recommendation of the superintendent of the institution and the Commissioner of Corrections, to grant a parole hearing before two-thirds of the sentence is completed. This discretionary power may prevent unnecessary incarceration in appropriate cases.

6. This Special Commission was created by chapter 162 of the Resolves of 1963, revised and continued by chapter 46 of the Resolves of 1964, and by chapter 32 of the Resolves of 1965.

■ Deterrence and punishment of crime are legitimate state objectives. Requiring persons convicted of violent crimes to serve two-thirds of the sentence imposed before becoming eligible for parole consideration is a reasonable method to implement this objective. "We do not wish to inhibit state experimental classifications in a practical and troublesome area . . . ." McGinnis v Royster, 410 U.S. at 270, 93 S. Ct. at 1059. The carefully tailored and comprehensive program enacted by the Commonwealth as a result of the studies of the Special Commission satisfies the requirements of the Equal Protection clause of the Fourteenth Amendment.

Further support for our position is found in Warden v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). That case involved a now-repealed federal statute which prohibited parole of persons convicted of certain drug offenses and sentenced to mandatory maximum imprisonment terms. 26 U.S.C. § 7237(d). The statute had previously survived challenges of unconstitutionality on Equal Protection, Due Process, and Eighth Amendment grounds. See, e. g., Sperling v. Willingham, 353 F.2d 6 (7th Cir. 1965), cert. denied 384 U.S. 962, 86 S.Ct. 1591, 16 L. Ed.2d 675, (1966); Halprin v. United States, 295 F.2d 458 (9th Cir. 1961). The Court in *Marrero* held that sentences imposed prior to the repealer date of the statute survived repeal, and held that those prisoners affected were not eligible for parole. The fact that Congress accepted the invitation of the Court to modify the seeming harshness of that result (See Pub.L. No. 93–481, sec. 2 (October 26, 1974)) underscores the importance of preserving the proper relationship between the coordinate branches of the government. The constitutionality of the no-parole statute was implicit in the Court's decision in *Marrero*. We can perceive no difference of constitutional dimension between a no-parole and a two-thirds rule.

Plaintiff's due process claim is equally without merit. His basic claim is that sentencing and parole are judicial prerogatives and that the legislature's intrusion into this area denies him due process by depriving the sentencing judge of the opportunity to impose a sentence permitting parole after one-third of the imposed time had been served. Plaintiff's premise demonstrates his misconception as to the allocation of responsibilities between the legislative and judicial branches in the area of sentencing.

■ Classification of conduct as criminal and establishment of sanctions for such conduct are functions of the legislative and not the judicial branch. "It is well within the province of the legislature to establish varying degrees of punishment for various offenses." Wagner v. Holmes, 361 F.Supp. 895, 896 (E.D.Ky.1973). See Warden v. Marrero, 417 U.S. at 664, 94 S.Ct. 2532. As one of its options the legislature may impose mandatory minimum terms of imprisonment for certain crimes. The legislature may also preclude the probation or suspension of a sentence, including a mandatory minimum sentence. See, e. g., Gallego v. United States, 276 F.2d 914 (9th Cir. 1960).

A two-thirds parole term is not a mandatory minimum sentence as such. It is consequentially similar, however, reflecting as it does a legislative determination that certain crimes justify the imposition of greater punishment than do other crimes and implementing that determination by a mandatory minimum period of confinement. Clearly, the establishment of a two-thirds parole term is a legitimate exercise of the legislative prerogative to provide sanctions which it deems appropriate for certain criminal conduct.

While a two-thirds parole term mandates a minimum period of confinement, it does so within the parameters of the sentence imposed. The one-third parole provision to which the plaintiff has no objection, operates in precisely the same fashion. The parole eligibility date, be it one-third or two-thirds, is triggered

by the period of confinement selected by the sentencing judge. It is ancillary to, rather than an intrusion on, the sentencing process and is a matter the judge is aware of at time of disposition.

Although, of course, the precise time at which the offender becomes eligible for parole is not part of the sentence, as it is in the case of § 4208(a), it is implicit in the terms of the sentence. And because it could not be seriously argued that sentencing decisions are made without regard to the period of time a defendant must spend in prison before becoming eligible for parole, or that such decisions would not be drastically affected by a substantial change in the proportion of the sentence required to be served before becoming eligible, parole eligibility can be properly viewed as being determined—and deliberately so—by the sentence of the District Judge.

Warden v. Marrero, 417 U.S. at 658, 94 S.Ct. at 2535.

■ The challenged statute reflects the traditional allocation of roles between the legislative and judicial branches of the state government and does not operate to deprive the plaintiff of his due process rights guaranteed by the Fourteenth Amendment.

This court has examined the other grounds presented in support of plaintiff's contentions and finds them to be without merit. Accordingly, we hold that ch. 127, § 133 of the General Laws does not violate the Constitution of the United States.

Plaintiff's complaint is hereby ordered dismissed.

So ordered.

### APPENDIX I

Mass.Gen.Laws ch. 127, § 133.

Parole permits may be granted by the parole board to prisoners subject to its jurisdiction at such time as the board in each case may determine; provided (a) that no prisoner, convicted for a violation of section thirteen, thirteen B, four-teen, fifteen, fifteen A, fifteen B, sixteen, seventeen, eighteen, eighteen A, nineteen, twenty, twenty-one, twenty-two, twenty-two A, twenty-three, twenty-four, twenty-four B, twenty-five, or twenty-six of chapter two hundred and sixty-five, or section seventeen, thirty-five, or thirty-five A of chapter two hundred and seventy-two, or for an attempt to commit any crime referred to in said sections, and held under a sentence containing a minimum sentence shall receive a parole permit until he shall have served two thirds of such minimum sentence, but in any event not less than two years or if he has two or more sentences to be served otherwise than concurrently, two thirds of the aggregate of the minimum terms of such several sentences, but in any event not less than two years for each such sentence; provided, further, however, that upon the written recommendation of the superintendent or the director of the prison camp, and the commissioner of correction, and, with the consent and approval of a majority of the full parole board, such a prisoner shall become eligible for parole consideration, and, with like consent and approval, may be given a parole permit before such time, but in any event not sooner than such a parole permit may be granted to other prisoners under clause (b) of this section; (b) that no other prisoner held under a sentence containing a minimum sentence shall receive a parole permit until he shall have served one third of such minimum sentence, but in any event not less than one year, or, if he has two or more sentences to be served otherwise than concurrently, one third of the aggregate of the minimum terms of such several sentences, but in any event not less than one year for each such sentence; (c) that no prisoner held under a sentence containing a minimum sentence for a crime committed while on parole shall receive a parole permit until he shall have served two thirds of such minimum sentence, or, if he has two or more sentences to be served otherwise than concurrently for offenses committed while

on parole, two thirds of the aggregate of the minimum terms of such several sentences, but in any event not less than two years for each such sentence. Notwithstanding clauses (a), (b) and (c) of this section, deductions shall be allowed for blood donations as provided in section one hundred and twenty-nine A, and deductions shall be allowed for time confined in a prison camp as provided in section one hundred and twenty-nine C, said deductions to reduce the term of imprisonment by computing said additional deductions and subtracting the same from the minimum term of sentence for release on parole as authorized by this section, or for reducing the term of imprisonment by deduction from the maximum term for which he may be held under his sentence or sentences.