John Richard SKOWRONEK,
Petitioner–Appellant,

v.

Edward G. BRENNAN,
Respondent–Appellee.

David Olushina JOHN,
Petitioner–Appellant,

v.

Edward G. BRENNAN,
Respondent–Appellee.

Nos. 88–1604, 88–1956.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 1989.

Decided Feb. 22, 1990.

Donald V. Morano (argued), Chicago, Ill., for petitioners-appellants.

Sheree L. Gowey, Office of the U.S. Atty., Steven Pray O'Connor (argued) Richard D. Humphrey, Asst. U.S. Atty., and John R. Byrnes, U.S. Atty., Office of the U.S. Atty., Madison, Wis., for respondent-appellee.

Before FLAUM, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Petitioner-appellants John Richard Skowronek and David Olushina John filed separate petitions in the Western District of Wisconsin for writs of habeas corpus seeking their immediate release under 42 U.S.C. § 2241. The district court (Shabaz, J. and Crabb, C.J., respectively) denied the petitions. Since the two appeals raise the same issues, they were consolidated. We affirm for the reasons stated below.

I.

The facts are undisputed. Skowronek was convicted of armed bank robbery and possession of a sawed-off shotgun and received a 25–year sentence on March 25, 1983. The United States Parole Commission ("Commission") held an initial parole hearing on December 10, 1984, and determined that although the parole guidelines for Skowronek's crime ranged from 36 to 48 months, Skowronek would not be eligible for parole until after he had served one-third of his 25–year sentence, or 100 months. 18 U.S.C. § 4205(a).[1] The Commission set Skowronek's presumptive parole date for March 30, 1991. He presently remains imprisoned at the Federal Correctional Institute in Oxford, Wisconsin.

John received a 29–year sentence on November 18, 1983 for his "non-peripheral role" in a drug conspiracy and importation.[2] The Commission determined that John, like Skowronek, was required to serve one-third of his sentence before becoming eligible for parole, and set John's presumptive parole date for February 4, 1993. 18 U.S.C. § 4205(a). The parole guidelines for John's crimes had been calculated at 40–52 months. John is also presently incarcerated at the Federal Correctional Institute in Oxford, Wisconsin. At this time, both Skowronek and John have served time beyond the maximum calculated by the parole guidelines for their respective crimes, but each still has a number of months to serve before reaching the statutory minimum of one-third of his original sentence.

After appellants' incarceration began, Congress passed the Comprehensive Crime Control Act of 1984, ("CCCA"), Title II, Pub.L. 98–473, 98 Stat. 1976 (1984). Chapter II of this Act, entitled the Sentencing Reform Act of 1984 ("SRA"), took effect on November 1, 1987. See Sentencing Reform Amendments of 1985, Pub.L. 99–217, § 4, 99 Stat. 1728 (1985);[3] Kimberlin v. Brewer, 825 F.2d 1157, 1158 (7th Cir.1987). The SRA abolished parole and the Parole Commission by repealing the parole provisions codified at 18 U.S.C. § 4201 et seq.[4] CCCA, Pub.L. 98–473, ch. II, § 218(a)(5), 98 Stat. 2027 (1984). However, the SRA's

---

1. 18 U.S.C. § 4205(a) states:
   Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence over thirty years, except to the extent otherwise provided by law.

2. This information is garnered from a Commission document. Apparently, exhibits pertinent to this case were attached to another prisoner's brief in the district court.

3. The SRA is codified at scattered sections of Title 18 of the U.S.Code. Originally, the SRA was to "take effect on the first day of the first calendar month beginning 24 months after the date of enactment," which would have been November 1, 1986. CCCA, Pub.L. 98–473, ch. II, § 235(a)(1), 98 Stat. 2031 (1984).

4. These were the parole provisions in effect when the appellants committed their crimes and were convicted.

"savings provision" extended the life of the Commission and parole provisions "for five years after the effective date as to an individual convicted of an offense ... *before the effective date*...." CCCA, Pub.L. 98–473, ch. II, § 235(b)(1)(A), 98 Stat. 2032 (1984) (emphasis added).[5]

In the originally enacted SRA, Congress ordered the Commission to

> set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, *that is within the range that applies to the prisoner under the applicable parole guideline.* A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of five years following the effective date of this Act.

CCCA, Pub.L. 98–473, ch. II, § 235(b)(3), 98 Stat. 2032 (1984) (emphasis added).

On December 7, 1987, Congress passed The Sentencing Act of 1987, which amended that portion of the SRA requiring the Commission to set release dates according to the parole guidelines. Pub.L. 100–182, § 2(b)(2), 101 Stat. 1266 (1987). The amended § 235(b)(3) now in effect reads as follows:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, *pursuant to Section 4206 of Title 18 U.S.C.*[6]

Pub.L. 100–182, § 2(b)(2), 101 Stat. 1266 (1987) (emphasis added). Moreover, Congress clarified that the SRA "shall apply only to offenses committed after the taking effect of this chapter." Pub.L. 100–182, § 2(a), 101 Stat. 1266 (1987).

The emphasized portions of the original and amended § 235(b)(3) give rise to these

appeals. Appellants Skowronek and John first argue that the SRA, as originally enacted, bestowed upon them a liberty interest—that is, the right to release on parole after serving the maximum sentences under the parole guidelines for their respective offenses. They assert that the mandatory language of § 235(b)(3) of the SRA, plus the fact that the SRA repealed 18 U.S.C. § 4205 (under which they have to serve one-third of their sentences before becoming eligible for parole), created this right. Thus, appellants argue, they must be released immediately.

Appellants also contend that once Congress created the right to release on parole, it could not amend § 235(b)(3) of the SRA without violating substantive due process rights. Skowronek and John urge this court to declare that the amendment is unconstitutional and violates the *ex post facto* prohibition. We do not reach appellants' second contention, because § 235(b)(3) as originally enacted did not create an expectation of liberty for these appellants; it simply clarified existing law.

## II.

While the issues presented are ones of first impression in this circuit, the same issues have been argued and rejected in five other circuits. *See Lewis v. Martin*, 880 F.2d 288 (10th Cir.1989); *United States ex rel. D'Agostino v. Keohane*, 877 F.2d 1167 (3rd Cir.1989); *Tripati v. United States Parole Commission*, 872 F.2d 328 (9th Cir.1989) (per curiam); *Valladares v. Keohane*, 871 F.2d 1560 (11th Cir.1989); *Lightsey v. Kastner*, 846 F.2d 329 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 807, 102 L.Ed.2d 798 (1989).

██ We reject appellants' argument that § 235(b)(3) as originally enacted mandated their release on parole before they had served one-third of their respective sen-

---

**5.** The parole provisions are codified at chapter 311 of Title 18, 18 U.S.C. §§ 4201–4218. SRA § 235(b)(1)(A) specifically extends all of chapter 311 for the five-year period. Congress has since amended this provision to clarify that the parole provisions apply to a person who *committed* an offense, rather than was *convicted* of an offense,

before the SRA's effective date. Pub.L. 100–182, § 2(b)(1), 101 Stat. 1266 (1987).

**6.** These parole determination criteria were in effect when the appellants committed their crimes and were convicted.

tences. Their "interpretation is contrary to judicial precedent, the structure of the relevant statutes, and common sense." *Lewis, supra,* at 290. As the Supreme Court has held, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). Neither appellant argues that his sentence is invalid. Neither argues that 18 U.S.C. § 4205(a), which requires that they serve one-third of their sentences before becoming eligible for parole, was improperly applied to them.

Skowronek and John nonetheless assert that they should be the recipients of an allegedly beneficial change in the law created by the original § 235(b)(3). However, we must read the original § 235(b)(3) in the context of the entire SRA, including the specific savings clause at § 235(b)(1)(A) and the general savings clause at 1 U.S.C. § 109. Both of these clauses belie appellants' claim that § 235(b)(3) conferred upon them the right to immediate release on parole, based on the alleged creation of a "liberty interest." [7]

The general savings clause states that

[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute unless the repealing act shall so expressly provide, and such statute shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of any penalty, forfeiture, or liability.

Section 218 of the SRA contains no such express retroactivity provision. CCCA, Pub.L. 98–473, ch. II, § 218, 98 Stat. 2027 (1984).

Appellants' argument that they should be released immediately on parole essentially requires the decrease of the penalties they are serving. The Tenth Circuit noted that to accept the argument that a prisoner was entitled to immediate release under § 235(b)(3) meant that it "would be transformed from a mere phase-out provision into a sweeping decision to grant earlier release dates to large numbers of federal prisoners currently serving time beyond their guideline-recommended release dates." *Lewis, supra,* 880 F.2d at 290–91.[8] The Eleventh Circuit reasoned that:

---

7. In essence, appellants' argument that the SRA created a "liberty interest" (an expectation of immediate release on parole) is, as noted by the Court of Appeals for the Fifth Circuit, "a smoke screen." *Lightsey v. Kastner,* 846 F.2d 329, 333 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 807, 102 L.Ed.2d 798 (1989). In general, parole statutes *may* create an expectation of parole. *See, generally, Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). This expectation stems from mandatory language authorizing parole when certain findings regarding the inmate have been made. *Allen,* 482 U.S. at 377–78, 107 S.Ct. at 2420–21 (parole statutes may "'create a presumption that parole release will be granted' when the designated findings are made") (quoting *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106); *Huggins v. Isenbarger,* 798 F.2d 203, 205 (7th Cir.1986) (per curiam). Skowronek and John argue that the "condition" they have "met" is that they have served in excess of the maximum sentence found in the parole guidelines for their crimes. We do not think this factor is the type of specific finding referred to in the Due Process cases cited above. Moreover, whatever expectation of parole Skowronek and John have is a function

of "the law in effect at the date the offense was committed." *Lightsey,* 846 F.2d at 333. *See also Warden v. Marrero,* 417 U.S. 653, 658, 94 S.Ct. 2532, 2535, 41 L.Ed.2d 383 (1974) ("Since ... an offender becomes eligible for parole after serving one-third of his sentence ... parole eligibility is a function of the length of the sentence fixed by the district judge.").

8. In an analogous case, the Supreme Court held that the general savings clause prevented the repeal of a "no parole" drug statute from applying retroactively to prisoners sentenced under the previous law. *Warden v. Marrero,* 417 U.S. 653, 659–64, 94 S.Ct. 2532, 2536–39, 41 L.Ed.2d 383 (1974). The Court reasoned that parole eligibility is determined at the time of sentence. "[S]ince ... an offender becomes eligible for parole after serving one-third of his sentence ... parole eligibility is a function of the length of the sentence fixed by the district judge." *Id.* at 658, 94 S.Ct. at 2535. Similarly, in *Farese v. Story,* 823 F.2d 975 (6th Cir.1987) (per curiam), a habeas petitioner who was sentenced under a "no parole" provision argued that § 224 of the SRA, which deleted this "no parole" provision, applied retroactively to him and made him eligible for parole. The Sixth Circuit held that "[i]n the absence of an explicit retroactivity provi-

Congress' language in section 235(b)(3) ... cannot be seen as requiring the immediate setting of release dates for those prisoners ineligible under [18 U.S.C.] section 4205. Absent a specific repeal of section 4205(a), the phrase "shall set a release date" cannot, as [petitioner] would have it, be taken as mandating that every prisoner be deemed eligible for parole and given a release date now, without regard to whether that prisoner will not be eligible for parole until some future date, and without regard to whether that prisoner will ever be eligible for parole.

*Valladares v. Keohane,* 871 F.2d 1560, 1563 (11th Cir.1989). We agree. While SRA § 218(a) did repeal 18 U.S.C. § 4205(a) *as of* November 1, 1987, it did not do so *retroactively.* It is untenable to assert that Congress wanted defendants who committed crimes prior to November 1, 1987 to be sentenced under the new laws.[9]

■ Further, Congress specifically kept the parole provisions of 18 U.S.C. § 4201 *et seq.* in effect for five years after the SRA's effective date as to people who committed crimes before November 1, 1987. CCCA, Pub.L. 98–473, ch. II, § 235(b)(1)(A), 98 Stat. 2032, as amended by Pub.L. 100–182, § 2(b)(1), 101 Stat. 1266 (1987); *see also United States Dept. of Justice v. Julian,* 486 U.S. 1, 5 n. 3, 108 S.Ct. 1606, 1609 n. 3, 100 L.Ed.2d 1 (1988); *Lightsey,* 846 F.2d at 333. Appellants Skowronek and John concede that pursuant to § 235(b)(1)(A), 18 U.S.C. § 4205 "goes out of existence on Nov[ember] 1, 1992, the same day the Parole Commission goes out of existence." Appellants' Brief at 18. Appellants therefore admit that 18 U.S.C. § 4205(a) continues to apply to them. However, appellants try to sidestep that fact by arguing that 18

U.S.C. § 4205(a) limits parole eligibility "except to the extent otherwise provided by law." Appellants claim that the original § 235(b)(3) is such an exception. We disagree. First, we think that the exception referred to in § 4205(a) only applies to other laws in effect at the time appellants committed their crimes. In addition, § 235(b)(3) as originally enacted did not specifically address the issue of parole eligibility.

■ In *Lightsey,* the Fifth Circuit also rejected the argument that by enacting the original § 235(b)(3) Congress ordered the Commission to grant parole "without any reference to the original terms of [the petitioner's] sentence," and held that § 235(b)(3) as originally enacted only clarified "what the law was all along;" that is, that the petitioner had to "serve out his ten years of ineligibility before he [could] be considered for parole." *Lightsey,* 846 F.2d at 333. We agree. The Commission set appellants' presumptive parole dates well before the SRA took effect. If we read § 235(b)(3) as the appellants urge us to do, it would mean that Congress intended to vacate all parole decisions made under valid statutes prior to November 1, 1987. We reject such reasoning.

Moreover, under 18 U.S.C. § 4206(c), the Commission is empowered to "grant or deny release on parole notwithstanding the guidelines...." The specific savings clause preserved this statute for five years; the provision applied at all times to persons who, like Skowronek and John, were convicted of crimes before November 1, 1987, the effective date of the Act. CCCA, Pub.L. 98–473, ch. II, § 235(b)(1)(A), 98 Stat. 2032 (1984); *accord Tripati,* 872 F.2d at 330.[10]

---

sion, the amendment does not apply to Farese's sentence." *Farese,* 823 F.2d at 976–77 (citing *Marrero,* 417 U.S. at 659–64, 94 S.Ct. at 2536–39 and 1 U.S.C. § 109). The court did not reach the issue of whether § 235(b)(3) conferred parole eligibility on the prisoner, as the case was decided before the effective date of the SRA. *Farese,* 823 F.2d at 977.

**9.** As amended, § 235(b)(3) *cites* 18 U.S.C. § 4206(a), the criteria used by the Commission in granting parole to *eligible* prisoners. *See,* 18

U.S.C. § 4206(a). Even if defendants were sentenced or resentenced *after* the effective date of the Act, Congress intended for them to be subject to the penalties in force at the time they committed their crimes, *i.e.,* the old law. *See United States v. Burgess,* 858 F.2d 1512, 1514 (11th Cir.1988) (per curiam).

**10.** As originally enacted, § 235(b)(3) may have created some confusion because it appeared to curb the Commission's discretion to set parole release dates while the specific savings clause

■ Finally, appellants' argument that the SRA mandated that they be given parole dates within the guidelines fails because Skowronek and John are not within the Commission's "jurisdiction" under § 235(b)(3). The appellants urge that "jurisdiction" under the SRA should be given its plain meaning, and that the only possible meaning is found in 18 U.S.C. § 4210(b): "the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced."

■ This same argument was made in *Lewis, supra,* 880 F.2d at 290–91. The appellate court rejected the petitioner's claim that he was entitled to immediate release under the original § 235(b)(3) because he would not be within the Commission's "jurisdiction" the day before November 1, 1992. *Id.* at 290–91. The court adopted the reasoning found in *Romano v. Luther,* 816 F.2d 832, 840–41 (2nd Cir. 1987), in which the Second Circuit found that 18 U.S.C. § 4210 dealt specifically with the Commission's *supervisory* power over a paroled inmate while § 235(b)(3)

> serve[d] the entirely different purpose of requiring the Commission to set a parole release date for a specific category of individuals. Obviously, the task of *setting a parole date has no application to those already under the Commission's supervisory jurisdiction.* Subsection 235(b)(3) concerns those within the jurisdiction of the Commission in the sense of remaining in prison.

*Romano,* 816 F.2d at 841 (emphasis added). We agree that 18 U.S.C. § 4210 clearly relates to *parolees,* not prisoners who will be entitled to parole at some future point in time and have not yet had their release date set.

■ To resolve any remaining doubts as to who was entitled to have release dates set under the original § 235(b)(3), the Commission adopted regulations clarifying the

meaning of "jurisdiction" even before the SRA took effect. 28 C.F.R. § 2.64. We must accept the Commission's interpretation of its duties unless it is unreasonable. *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981). The Commission interpreted § 235(b)(3) as "not apply[ing] to persons who will be on parole or mandatory release supervision at the expiration of the five year period." 28 C.F.R. § 2.64(c). Skowronek is to be released on March 30, 1991; therefore, for purposes of § 235(b)(3) he would not be within the Commission's "jurisdiction" under this regulation. The Commission also determined that § 235(b)(3) did not "change the parole eligibility date established by a prisoner's sentence...." 28 C.F.R. § 2.64(d). The regulations clarify that both Skowronek and John must serve one-third of their sentences before becoming eligible for parole.

As previously discussed, Congress specifically preserved the parole provisions in effect before November 1, 1987, for five years after that date, as to persons such as Skowronek and John. The Commission's regulations reasonably interpret Congressional intent. *Accord, Hackett v. U.S. Parole Commission,* 851 F.2d 127, 132–33 (6th Cir.1987) (per curiam).

At oral argument, appellants' attorney asserted that we must reject the Commission's definition of "jurisdiction." He noted that individuals who commit crimes after November 1, 1987 are sentenced under the new sentencing guidelines and thus are not eligible for parole,[11] and that the original § 235(b)(3) was in effect from November 1, 1987 until December 7, 1987. Counsel argued that if we do not define "jurisdiction" in the original § 235(b)(3) to include those who committed crimes *before* November 1, 1987, such as Skowronek and John, the original § 235(b)(3), in effect for approximately one month, would apply to no one. Counsel concluded that Congress

---

preserved such discretion. However, Congress swiftly amended § 235(b)(3) to make clear that the Commission retained its discretion to determine parole release dates under 18 U.S.C. § 4206 during the five-year transition period. Pub.L. 100–182, 101 Stat. 1266 (1987). This is

further evidence that Congress intended to preserve the law in effect before November 1, 1987 for the five-year transition period.

**11.** Section 218(a)(5) of the SRA abolished 18 U.S.C. § 4206 effective November 1, 1987.

could not have intended this result. We agree it could have been an oversight. The fact that Congress swiftly amended § 235(b)(3) to clarify that the Commission should set parole release dates pursuant to 18 U.S.C. § 4206 illustrates that Congress meant for the Commission to retain its discretion all along. This amendment makes sense in light of the specific savings clause of § 235(b)(1)(A).

### III.

Because the general savings clause, the SRA's specific savings clause, and the Commission's regulations all contradict appellants' claim that the original SRA § 235(b)(3) created a liberty interest, Skowronek and John are not entitled to immediate release under 42 U.S.C. § 2241. In agreeing with the other circuits that have addressed the issue, we do not reach the issue of whether the amendment to § 235(b)(3) violates the *ex post facto* provision of the Constitution.[12] The district courts' judgments denying appellants' petitions for writs of habeas corpus are hereby

AFFIRMED.

---

**12.** The question is whether the new law is both "retrospective and more onerous than the law in effect on the date of the offense." *Weaver v. Graham,* 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). The law in effect at the time of appellants' offenses conferred parole eligibili-

ty only after prisoners had served one-third of their sentences, and allowed the Commission to grant or deny parole notwithstanding the guidelines. Those laws are still in effect. Appellants could therefore show no harm. *See Lightsey,* 846 F.2d at 333–34.