**Bobby Ray JONES, Appellant,**

v.

**U.S. BUREAU OF PRISONS, C.A. Turner, Warden, MCFP, U.S. Parole Commission, Appellees.**

No. 89–1370.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1990.

Decided May 17, 1990.

Philip M. Moomaw, Springfield, Mo., for appellant.

Richard E. Monroe, Springfield, Mo., for appellees.

Before McMILLIAN and MAGILL, Circuit Judges, and HANSON,* Senior District Judge.

MAGILL, Circuit Judge.

Bobby Ray Jones appeals the district court's [1] dismissal of his petition for writ of habeas corpus. Jones argues that the United States Parole Commission (Commission) abused its discretion and acted in an arbitrary and capricious manner, *ex post facto*, in failing to provide Jones an initial parole hearing prior to, or as soon as possible after, his parole eligibility date. Jones further argues that the Commission abused its discretion and acted in an arbitrary and capricious manner in ordering him to "continue to expiration" on his federal sentence, or to serve two-thirds of that sentence. Although Jones did not receive a parole hearing within the time limit required by federal law, we hold that he is not entitled to habeas relief because he did eventually receive a hearing. Furthermore, we join the Third, Fourth, Sixth and Ninth Circuits in holding that pursuant to 18 U.S.C. § 4218(d) [2] we do not have jurisdiction to review the substantive decision of the Commission to grant or deny parole. We affirm the district court's dismissal of Jones' petition for writ of habeas corpus without prejudice, albeit on other grounds.

I.

On July 4, 1970, Bobby Ray Jones robbed and kidnapped a boy and an elderly gentleman, locking them in the trunk of his car. Jones drove to a bridge, shot the boy in the face, and when he did not die, ordered him

---

* THE HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable William R. Collinson, Senior United States District Judge for the Western District of Missouri.

2. Chapter II of the Comprehensive Crime Control Act of 1984, Title II, Pub.L. 98–473, 98 Stat.1976 (1984), is entitled the Sentencing Reform Act of 1984 (SRA). The SRA went into effect on November 1, 1987. *See* Sentencing Reform Amendments Act of 1985, § 4, 99 Stat. 1728 (1985). Although the SRA abolished parole and the Parole Commission by repealing the parole provisions codified at 18 U.S.C. § 4201 *et seq.*, Congress specifically kept these parole provisions "in effect for five years after the SRA's effective date as to people who committed crimes before November 1, 1987." *See Skowronek v. Brennan*, 896 F.2d 264, 267, 269 (7th Cir.1990).

to jump off the bridge.[3] Jones then drove to another location with the elderly gentleman still in the trunk. He repeatedly tried to kill the elderly man by shooting at him in the trunk of the car. Finding his efforts to be unsuccessful, he ordered the man out of the trunk and shot him in the back of the head fatally wounding him.

For these crimes, Jones pleaded guilty on June 1, 1971 in a Louisiana state court to two counts of armed robbery, two counts of kidnapping and one count of manslaughter. The state court sentenced him to twenty-one years on the manslaughter charge and five years on each of the kidnapping charges.

On July 30, 1971, Jones pleaded guilty in the United States District Court for the Eastern District of Texas to two counts of kidnapping.[4] On August 18, 1971, the federal sentencing court imposed a sentence of two concurrent life terms and recommended that Jones serve these terms concurrent to the thirty-one year sentence he received from the Louisiana state court. The Bureau of Prisons subsequently designated the Louisiana State Penitentiary at Angola as the place of his confinement for the federal sentence.

Jones became eligible for parole on his Texas federal sentence on August 17, 1981. Nevertheless, despite two requests, Jones did not actually receive a parole hearing until April 21, 1987, nearly six years after his federal parole eligibility date and slightly more than three months after his discharge from the Louisiana Department of Corrections and his transfer to federal custody.[5] At the April 21, 1987 parole hearing, the Commission examiners recommended that Jones be continued to the expiration of his sentence. The regional commissioner agreed with this recommendation and by Notice of Action dated June 10, 1987, the Commission continued Jones to the expiration of his sentence. The full Commission affirmed its previous decision by Notice of Action dated October 22, 1987.

Jones then filed this petition for writ of habeas corpus. On December 28, 1988, the district court dismissed Jones' petition without prejudice. It is from this order that Jones appeals.

## II.

### A.

Jones first argues that the Commission abused its discretion and acted in an arbitrary and capricious manner, *ex post facto*, in failing to provide Jones an initial parole hearing prior to, or as soon as possible after, his August 17, 1981 parole eligibility date. Jones argues that when he finally received his parole hearing in 1987, the Commission should have applied the guidelines in effect at the time of his parole eligibility date. The Commission's retrospective application of the law in effect in 1987 at his 1987 parole hearing, Jones contends, constituted an *ex post facto* application of the law because he was disadvantaged by a substantial change in the Commission's guidelines described for his offense.[6]

After a thorough review of the district court record, we can identify no instance where Jones argued to the district court that the Commission's application of the 1987 guidelines at his belated 1987 parole hearing constituted an *ex post facto* application of the law. Furthermore, we cannot even identify any argument before the district court that Jones was even prejudiced by the hearing delay as a result of the change in law from 1981 to 1987. He raises these arguments for the first time on appeal.[7] Therefore, we decline to address

---

3. Despite these atrocities, the boy did not die.

4. These counts arose out of the same conduct which provided the basis for the Louisiana state court convictions.

5. Jones was transferred to federal custody after he completed his obligation to Louisiana stemming from his state convictions for kidnapping, armed robbery and manslaughter.

6. Jones argues that the guidelines under which the Commission ordered him to serve in 1987 are over seven times higher than the appropriate guidelines from August 1981.

7. We are at a loss to explain why government counsel failed to inform the panel of this fact.

these arguments not only because Jones did not present them to the district court but because we identify no manifest injustice that would result from our refusal to address them. *See Molasky v. Comm'r Internal Revenue,* 897 F.2d 334, 338 (8th Cir.1990); *Estes v. United States,* 883 F.2d 645, 648 (8th Cir.1989); *Glick v. Walker,* 834 F.2d 709, 711 (8th Cir.1987); *Carpenter v. United States,* 720 F.2d 546, 548 (8th Cir.1983).

■ Because Jones' first argument on appeal is based almost exclusively on the alleged prejudicial effect of the Commission's application of the 1987 parole guidelines to his April 1987 hearing, there is little left to resolve. Jones argues that the Commission abused its discretion by failing to provide Jones an initial parole hearing as required by 28 C.F.R. § 2.12(a). Section 2.12(a) provides:

> An initial [parole] hearing shall be conducted within 120 days of a prisoner's arrival at a Federal institution or as soon thereafter as practicable; except that in the case of a prisoner with a minimum term of parole ineligibility of ten years or more, the initial hearing shall be conducted at least 90 days prior to the completion of such minimum term, or as soon thereafter as practicable.

*Id.*[8] Because at the time Jones became eligible for a parole hearing he was serving a concurrent state and federal sentence while in state custody, he was not entitled to a parole hearing at which he could personally appear. Nevertheless, in 1981 he was entitled to a parole hearing on the record. 28 C.F.R. § 2.16(b). Despite two requests, the Commission failed to hold any type of hearing until almost six years later.

While it is correct that the Commission failed to comply with federal regulations by failing to give Jones a parole hearing *on the record* in 1981,[9] neither the "[d]istrict [c]ourt nor this [c]ourt has the right to correct the mistake by ordering the petitioner released. The most we can do is require the Parole Board to give the petitioner a fair hearing in accordance with its rules and regulations at the earliest possible date." *Burton v. Ciccone,* 484 F.2d 1322, 1323 (8th Cir.1973); *see United States v. Miller,* 599 F.2d 249, 251 (8th Cir.1979) (per curiam); *DeShields v. United States Parole Comm'n,* 593 F.2d 354, 355 (8th Cir.1979) (dictum). In this case, Jones was given a hearing by the Parole Board on April 21, 1987. His only allegation of prejudice on appeal was never presented to the district court. Furthermore, his only allegation of prejudice presented to the district court was not preserved on appeal.[10] Therefore, we can provide no additional relief on habeas than what Jones has already received.

### B.

Second, Jones argues that the Commission abused its discretion and acted in an arbitrary and capricious manner, thereby denying him due process and irreparably harming him, when it ordered him to "continue to expiration" his federal sentence, or to serve two-thirds of that sentence. According to Jones, the Commission abused its discretion by improperly taking into account his disciplinary reports from the Louisiana Department of Corrections[11] and by ignoring certain mitigating factors in determining the guideline to be 371 months. The mitigating circumstances the Commission allegedly failed to consider included:

---

8. In August 1981, "30" was inserted for "90."

9. Furthermore, Jones argues in his brief that the Commission violated its *own procedures manual* in failing to give Jones a hearing in August of 1981. Jones raises this argument for the first time on appeal and as such we refuse to consider it. Our inquiry is limited to the argument made below that the Commission violated the statute and regulations in not providing a timely hearing. Even if we considered the procedures manual argument, Jones would not be entitled to relief.

10. In his traverse, Jones explained that the Commission's failure to hold a hearing in 1981 at which it could make a determination concerning his release date caused him to be ineligible for state parole.

11. After reviewing the record, we note that this argument was not raised before the district court. It is raised for the first time on appeal. Therefore, we decline to consider it. *See Molasky,* 897 F.2d at 338.

(1) Jones was intoxicated when he committed the offense; (2) some of the "more grisly" details of the crimes can be attributed to his drunkenness; (3) he was convicted of manslaughter, not murder, in Louisiana; (4) manslaughter and kidnapping are category 7 offenses under the 1987 guidelines with a guideline range of 52–80 months;[12] (5) he had a good work record while incarcerated in the Louisiana state prison; (6) he underwent educational rehabilitation; (7) he suffered from diminished intelligence; and (8) one hearing examiner stated that two people were dead (when in fact only one had died) before setting Jones' offense behavior at category 8.

Before reaching the merits of Jones' second claim, we must first determine whether we have jurisdiction to review any of the challenges made to the Commission's substantive determination to deny parole. On numerous occasions, this court has applied an abuse of discretion standard[13] in reviewing Commission decisions, and has implicitly assumed the existence of jurisdiction to conduct that analysis. *See, e.g., Blue v. Lacy*, 857 F.2d 479, 480–81 (8th Cir.1988) (per curiam) (Commission's use of information in prisoner's presentence investigation report that had been expressly disregarded by sentencing court does not constitute an abuse of discretion) (citing *Perry v. United States Parole Comm'n*, 831 F.2d 811, 812 (8th Cir.1987), *cert. denied*, 485 U.S. 963, 108 S.Ct. 1230, 99 L.Ed.2d 429 (1988)); *Montgomery v. United States Parole Comm'n*, 838 F.2d 299, 301 (8th Cir. 1988) (per curiam) (Commission did not abuse its discretion in setting severity rating); *White v. United States Parole Comm'n*, 856 F.2d 59, 60 (8th Cir.1988) (per curiam) (Commission's use of petitioner's charges and convictions incurred while on parole to revoke his parole not arbitrary or capricious or an abuse of discretion even though parole officer represented to peti-

tioner that the Commission would not act upon the charges); *Briggs v. United States Parole Comm'n*, 736 F.2d 446, 450 (8th Cir.1984) (Commission acted without authority and abused its discretion when it deviated from the guidelines by two months without providing petitioner with a statement of reasons for doing so as required by 18 U.S.C. § 4206(c)). None of these prior opinions discuss in any manner the issue of whether 18 U.S.C. §§ 4218(d) and 4203(b)(1) divest us of jurisdiction to review the substantive decisions of the Commission to grant or deny parole. The jurisdictional issue simply has never been discussed by this court. Thus, none of our prior decisions can be "read as having decided that issue, and it remains open for consideration in the present case." *United States v. Evidente*, 894 F.2d 1000, 1004 n. 5 (8th Cir.1990).

■ Section 4218(d) provides, in part, that actions of the Commission pursuant to paragraph (1) of § 4203(b) shall be considered actions committed to agency discretion for the purposes of the Administrative Procedures Act, 5 U.S.C. § 701(a)(2). Section 4203(b) provides in part that the "Commission, by majority vote, and pursuant to the procedures set out in this chapter, shall have the power to ... grant or deny an application or recommendation to parole any eligible prisoner...." Therefore, pursuant to § 4218(d), it is clear that the Commission's refusal to grant Jones parole was an action committed to agency discretion. *Cf. Yamamoto v. United States Parole Comm'n*, 794 F.2d 1295, 1299 (8th Cir.1986) (per curiam) ("[a]lthough the parole guidelines were intended to reduce the disparity of prison terms for like offenders and offenses ..., Congress clearly intended that parole eligibility determinations would remain a matter of discretion with the Parole Commission").

■ In *Wallace v. Christensen*, 802 F.2d 1539 (9th Cir.1986) (en banc), the Ninth

---

**12.** Jones concedes in his brief, however, that kidnapping which results in a death is a category 8 offense with a corresponding parole guideline range of 100–plus months.

**13.** Under this standard, we have affirmed the Commission's parole decisions unless they were arbitrary or capricious or constituted an abuse of discretion, or were otherwise not in accordance with law. *See Blue v. Lacy*, 857 F.2d 479, 480–81 (8th Cir.1988) (per curiam).

Circuit was confronted with the precise jurisdictional issue we examine today. In a thorough and well-reasoned opinion, the Ninth Circuit held that the language of § 4218(d) provides that "decisions of the Commission in granting, denying, conditioning, modifying or revoking parole under section 4203(b)(1), (2), (3) which are *substantive* in nature, are committed to the discretion of the Commission and are not reviewable under 5 U.S.C. § 701(a)(2)." *Id.* at 1544–45 (emphasis in original). Such language, the Ninth Circuit concluded, demonstrates that Congress "has specifically rebutted the presumption of reviewability of the Commission's substantive decisions to grant or deny parole, and therefore, these decisions may not be reviewed even for abuse of discretion."[14] *Id.* at 1545 (citing *Farkas v. United States,* 744 F.2d 37, 38–39 (6th Cir.1984)); *Garafola v. Wilkinson,* 721 F.2d 420, 423–24 & n. 6 (3d Cir.1983), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1681, 80 L.Ed.2d 155 (1984); *Garcia v. Neagle,* 660 F.2d 983, 988–89 (4th Cir. 1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982)). *See also Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). We find the *Wallace* court's analysis and conclusions to be persuasive. Therefore, we join the Third, Fourth, Sixth and Ninth Circuits in holding that pursuant to § 4218(d) we do not have jurisdiction to review the substantive decisions of the Commission to grant or deny parole.

As the Ninth Circuit observed, however, this holding does not end the jurisdictional inquiry. Merely because we have no jurisdiction to review the Commission's substantive decisions to grant or deny parole does not necessarily mean that we have no jurisdiction to review the Commission's interpretation and application of the parole guidelines. In other words, while we have no jurisdiction to review the Commission's ultimate substantive decisions granting or denying parole, we must decide to what

extent we are precluded from reviewing the Commission's decision-making processes.

The *Wallace* court concluded that in enacting the Parole Act, Congress "intended to carve out an area of decision-making which, like the decision to grant or deny parole, is committed to agency discretion and hence unreviewable even for abuse of discretion." *Wallace,* 802 F.2d at 1551. Therefore,

> unless a petitioner alleges the Commission acted beyond the scope of discretion granted by Congress, a federal court has no jurisdiction to entertain his claim. By definition, a bare allegation that the Commission has abused *its discretion* acknowledges that the Commission has exercised a judgment, if improperly, within its discretion. Congress has specifically withdrawn such cases from our jurisdiction.

*Id.*

■ The *Wallace* court did note, however, that a court may still review a decision of the Commission to determine whether it has acted outside its statutory limits. For example, 18 U.S.C. §§ 4206(a)(1), (2), and 4207 provide that the Commission must take into account certain information in rendering an individual parole decision if relevant and available. Although the Commission has discretion in deciding whether the factors are indeed relevant, a court may "review whether the Commission completely failed to consider these factors which by statute it is required to consider in rendering its parole decision." *Wallace,* 802 F.2d at 1551; *see also Briggs,* 736 F.2d at 450 (reversed district court and remanded the case to it with directions to order Commission to either conform to the guidelines or state reasons pursuant to section 4206(c) for deviating from them). Therefore, in determining whether we are confronted with a case in which we have jurisdiction to review the Commission's decision-making process, we

---

**14.** The *Wallace* court also quoted portions of the legislative history to substantiate its "conclusion that Congress intended to exempt from judicial review the Commission's substantive decisions

to grant or deny parole." *Id.* at 1546. We agree with the court's finding that the legislative history supports its interpretation of the language of § 4218.

must determine whether it "involves the exercise of judgment among a range of possible choices or options [no jurisdiction], or involves a plain violation of a matter which does not admit of discretion and choice [jurisdiction]." *Wallace,* 802 F.2d at 1552.[15]

■ Applying these jurisdictional rules to our case, we hold that we have no jurisdiction to entertain Jones' claim that the Commission erred in determining his parole release guidelines to be more than forty-eight months above his minimum guideline limit. Such action is a substantive decision of the Commission to deny parole. Under § 4218(d), we have no jurisdiction to review this decision. Jones also attacks the decision-making process of the Commission, arguing that the Commission improperly failed to consider certain mitigating information. We emphasize that we may not review any of Jones' claims if they involve an allegation that the Commission merely abused its discretion. To be successful, Jones must demonstrate that the Commission's decisions involve a plain violation of a matter which does not admit of discretion and choice. Applying this standard, we do not have jurisdiction over any of the claims.

As a preliminary matter, we note that Jones primarily claims that the Commission abused its discretion, not that its actions exceeded the scope of the discretion prescribed by Congress. We have no jurisdiction to entertain his claims that the Commission abused its discretion in its decision-making process. To the extent Jones does not argue that the Commission exceeded the scope of its discretion, violated the Constitution, or reached decisions so arbitrary and capricious as to amount to a violation of due process, our inquiry is at an end.[16]

■ Even if we construe Jones' arguments to include the assertion that the Commission exceeded the scope of the discretion granted to it by Congress, we still have no jurisdiction. The first two arguments concern Jones' claim that the Commission failed to consider the effects of his intoxication. A review of the initial hearing report (Report) and the Regional Commissioner's Evaluation, Order and Vote (Regional Report) indicates that the Commission was aware of Jones' intoxication but nevertheless thought his crimes so grisly that his sentence should be continued to its expiration. Merely because the Commission refused to alter their decision in favor of parole does not mean they did not consider the mitigating factor. The weight to be given this factor is a matter of discretion. *See Hayward v. United States Parole Comm'n,* 659 F.2d 857, 861 (8th Cir.1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 454 (1982). Therefore, we have no jurisdiction to review this claim.

We similarly have no jurisdiction to review Jones' claims that the Commission failed to consider that he was convicted of manslaughter, and not murder, in Louisiana and that manslaughter and kidnapping are category 7, not category 8, offenses. The Commission was aware of Jones' intoxication and his manslaughter conviction. The weight to be given Jones' conviction for manslaughter in Louisiana state court and his intoxication at the time of the offense are within the discretion of the Commission and as such we have no jurisdiction to review this claim. *See id.* Furthermore, the appropriate category in which to classify Jones' offense is a decision committed to the discretion of the Commission. *See Montgomery,* 838 F.2d at 301. There-

---

**15.** We note our agreement with the *Wallace* court that a court has jurisdiction not only to review a Commission decision that violates an explicit requirement of the Act or the guidelines, but to review whether the Commission violated the Constitution. *Id.* at 1552 (citing *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); *Johnson v. Robison,* 415 U.S. 361, 367–68, 94 S.Ct. 1160, 1165–66, 39 L.Ed.2d 389 (1974); *Garcia,* 660 F.2d at 988).

**16.** The government also argues in support of the district court's order dismissing Jones' petition for writ of habeas corpus that Jones cannot justifiably claim injury from the Commission's actions because he subsequently waived an opportunity for an in-person parole hearing. Finding no jurisdiction to consider Jones' claims of abuse of discretion, we need not reach this issue.

fore, we have no jurisdiction to review his claim.

We also have no jurisdiction to review Jones' claim that the Commission failed to consider his work record in state prison. The Commission has discretion to determine whether such information is relevant and available. In this case, the Commission had requested such information but it was not contained in the materials at Jones' hearing. The district court found as a matter of fact that this information was not available. Jones does not attack this finding as clearly erroneous.[17] Therefore, because the Commission must consider only available and relevant information specified by Congress, *see* 18 U.S.C. §§ 4206, 4207, the Commission did not exceed the scope of the discretion granted it by Congress, when it failed to consider his unavailable work-release record.

We also have no jurisdiction to review Jones' claim that the Commission did not accord any weight to either his educational rehabilitation or his diminished intelligence because the weight to be given a factor at the hearing is a matter of discretion. *See Hayward*, 659 F.2d at 861.

We also have no jurisdiction to review Jones' claim that one hearing examiner mischaracterized the facts of his case by stating that two victims died. Because the factfinding process is committed to the Commission's discretion, *see Farkas*, 744 F.2d at 38–39, we have no jurisdiction to review the Commission's factual findings which were necessary components of its ultimate decision.[18]

### III.

In conclusion, we refuse to address Jones' argument that the Commission's application of the 1987 guidelines at his belated 1987 parole hearing, constituted an *ex post facto* application of the law, because he did not raise it before the district court. We hold that the only remedy available when the Commission fails to hold a timely hearing is for us to require the Commission to give the petitioner a fair hearing in accordance with its rules and regulations at the earliest possible date. Because Jones eventually received a hearing, although nearly six years late, we cannot grant him further relief. We further hold that we have no jurisdiction to review the substantive decisions of the Commission to grant or deny parole. We only have jurisdiction to review the Commission's decision-making process to determine whether the Commission exceeded the scope of its authority granted by Congress. Because the Commission did not exceed the scope of its authority, we have no jurisdiction to review any of Jones' claims. We affirm the district court, albeit on other grounds.

---

**17.** However, we do note that contrary to the conclusions of the district court, the Notice of Action on Appeal clearly states that Jones' "institutional behavior and achievements [were] considered by the Commission but [were] not deemed sufficient to warrant a more lenient decision." Notice of Action on Appeal, October 22, 1987. If the entire institutional record was considered by the Commission, there would not be jurisdiction over his claim because the weight the Commission accorded to the work-release record would have been within its discretion.

**18.** However, we do note that the Commission's Report clearly states that only one victim died.