# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3024

_____

Gennaro Langella,

        Appellant,

v.

Marty C. Anderson, Warden,

        Appellee.

\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.

_____

Submitted: April 14, 2010
Filed: July 15, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Gennaro Langella appeals the district court's[1] dismissal of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Between 1985 and 1987, Langella was convicted of three separate offenses related to participation in organized crime. In his habeas petition, Langella argues that the United States Parole Commission (Parole Commission) violated his constitutional rights by relying on erroneous facts

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James C. England, Chief Magistrate Judge, United States District Court for the Western District of Missouri.

and overlooking favorable information in denying him parole.[2]  Because we do not have jurisdiction to review the Parole Commission's substantive decisions and because Langella's claims are based on his disagreement with the Parole Commission's subjective appraisal of disputed facts, we affirm the district court's dismissal of the petition.

I.

Langella's convictions stemmed from his involvement in the Colombo Organized Crime Family of La Cosa Nostra, a criminal enterprise that for many years engaged in racketeering, extortion, loan-sharking, embezzlement, bribery, and various other illegal schemes in New York City.  In 1985, Langella received a ten-year prison sentence for making false statements to a grand jury.  In 1986 and 1987, Langella was convicted of racketeering offenses related to the construction industry.  Specifically, Langella and his co-conspirators managed to control concrete-pouring jobs in Manhattan and extort payoffs from contractors as a price for allowing them to submit successful bids on construction jobs.  See United States v. Langella, 804 F.2d 185 (2d Cir. 1986) (discussing the indictments for the racketeering offenses).  The aggregate prison term for all three convictions exceeded 101 years, and when Langella was last sentenced in 1987, the sentencing judge recommended that he never be released on parole.  The Department of Justice produced a report in connection with Langella's sentence that identified Langella as one of the most dangerous criminals in the country and recommended that he serve the maximum term of incarceration permitted by law.

---

[2]Both Langella and the district court were under the impression that Langella was required to obtain a certificate of appealability in order to appeal the court's dismissal of his petition.  We note, however, that Langella is a federal prisoner effectively filing his petition under § 2241, and that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement therefore does not apply to him.  See Murphy v. United States, 199 F.3d 599, 601 n.2 (2d Cir. 1999).

At Langella's initial parole hearing in 1996, the hearing examiner received statements from Langella's attorney and from David N. Kelley, then-Chief of the Organized Crime and Terrorism Unit of the United States Attorney's Office for the Southern District of New York. Kelley presented information that Langella was an underboss in the Colombo Family—meaning that he was near the top of the organizational hierarchy and frequently in charge of the Colombo Family's day-to-day activities. Kelley also explained that the hierarchical structure of the crime family made it unlikely that low-level operatives would commit criminal acts without approval from their leaders. Accordingly, Kelley maintained that the Parole Commission could hold Langella responsible for a wide variety of criminal activities as the supervisor of a criminal organization. Kelley further explained that several cooperating witnesses and informants had identified Langella as being responsible for ordering murders carried out by the Colombo Family.

Langella argued that the government's primary source, Gregory Scarpa, Sr., was unreliable because he was a criminal who had lied to the FBI about his own involvement in several murders and had possibly developed an improper relationship with his FBI handler. See United States v. Orena, 145 F.3d 551, 556 (2d Cir. 1998) (discussing Scarpa's credibility and noting an internal FBI investigation). According to Langella, both Scarpa and his FBI handler were corrupt and could not be trusted. Langella also assailed the lack of direct evidence that he had committed the murders, as well as the government's characterization of the Colombo Family as an organization in which orders invariably flowed from the top down.

The hearing examiner concluded that Langella's Offense Severity Rating should be a Category Eight—the highest severity—because it involved murder, and he recommended that Langella be required to continue serving his sentence until a fifteen year reconsideration hearing in May 2011, at which time Langella will be seventy-two years old. The Parole Commission adopted this recommendation, observing that the Category Eight severity was appropriate because Langella

"occupied a high level position within an organized crime family over an extended period of time in the 1970's and 1980's [and] [a]s such [he] played a principal role in directing and controlling the illegal racketeering activities of the organization which included contract murders." Although Langella reiterated his arguments and presented some additional information at statutory interim hearings in 2000 and 2005, the Parole Commission reaffirmed its original conclusion.

## II.

We have limited jurisdiction to review the decisions of the Parole Commission. Edmundson v. Turner, 954 F.2d 510, 512 (8th Cir. 1992). The decision whether to grant or deny parole is one that Congress has committed to agency discretion, and we are thus barred from reviewing the Parole Commission's substantive determinations. Id. We have jurisdiction to review a prisoner's claim only insofar as it properly alleges that the Parole Commission "exceeded the scope of its discretion, violated the Constitution, or reached decisions so arbitrary and capricious as to amount to a violation of due process." Jones v. U.S. Bureau of Prisons, 903 F.2d 1178, 1184 (8th Cir. 1990). The agency's fact-finding process and the relative weight that it places on the facts is a discretionary matter that is not subject to our review. Id. at 1185.

The gravamen of Langella's complaint is that the Parole Commission incorrectly held him responsible for murders because the facts did not establish his guilt by a preponderance of the evidence. He argues that the government's primary source of information, Scarpa, is not credible and that the favorable evidence presented at his parole hearings demonstrates that he did not commit the crimes at issue. Resolution of this matter, however, involves credibility determinations and factual findings that we are not at liberty to second-guess. The record reflects that the Parole Commission considered Langella's arguments and found them unpersuasive—noting, for example, that although Scarpa's credibility was questionable, Langella's statements were also problematic because he had been

-4-

convicted of lying to a grand jury and had a motive to lie to the Parole Commission about his previous crimes. The nature of the allegations makes them inherently difficult to prove or disprove, because Langella was primarily charged with passing along orders as a key figure in a complicated, highly secretive criminal enterprise. Nevertheless, it was within the Parole Commission's discretion to make a preponderance finding about Langella's involvement in the murders, and we do not have jurisdiction to review its factual determination.

Langella maintains that the Parole Commission violated his due process rights by failing to consider his evidence and by relinquishing its discretion to Kelley, whose opinions Langella argues the Parole Commission blindly followed. He also contends that the agency relied on inaccurate information in making its decision. The record does not support these contentions. The Parole Commission considered Langella's evidence, producing a number of written decisions that analyzed his arguments. What Langella characterizes as inaccurate information is in reality simply disputed evidence. The Parole Commission had a rational basis for finding that Langella was responsible for murders, and the materials submitted by Langella did not compel a contrary conclusion. The Parole Commission's actions were therefore not so arbitrary and capricious as to amount to a violation of due process. The fact that the Parole Commission "refused to alter [its] decision in favor of parole does not mean [it] did not consider [the evidence]." Id. at 1184. The weight to be given to that evidence was a matter within the agency's discretion. Id.

Langella has not demonstrated a constitutional violation, and we likewise conclude that his remaining claims of improprieties do not establish an entitlement to relief. Accordingly, the district court did not err in dismissing Langella's petition.

The judgment is affirmed.

_____