EMAS, J.
Paul Lewis appeals from the trial court’s order denying his motion for postconviction relief. Lewis contends that his sentence of life with parole eligibility amounts to a de facto life sentence and violates Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). We affirm.
The limited record in this case reveals the following [1]:
In 1981, the defendant Paul Lewis (sixteen years old at the time), was charged with five counts of armed robbery and two counts of aggravated battery. Lewis later entered a negotiated guilty plea in exchange for five concurrent life sentences on the five armed robbery counts, with parole eligibility after twenty-five years.[2]
In 2010, the United States Supreme Court, in Graham, held that the Eighth Amendment prohibits a state from imposing a life-without-parole sentence on a juvenile convicted of a non-homicide offense. The Supreme Court explained its rationale:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.
560 U.S. at 48,130 S.Ct. at 2030.
Lewis filed a motion for postconviction relief asserting that his life sentences violated Graham, because his current presumptive parole release date (which according to the record below is August 3, 2042) amounts to a de facto life sentence without parole. Lewis contends, in his brief: “Given Mr. Lewis’s experience in Florida’s parole system, he contends that it does not provide a ‘meaningful opportunity’ for release as Graham requires.” However, the sentences imposed upon Lewis are not controlled by the holding in Graham; moreover, Lewis’s current presumptive parole date is a result of his own apparent failure to take advantage of the *294 opportunity offered to him under the parole system.
When Lewis was sentenced to life in 1981, he was eligible for parole after serving twenty-five years, when he would have been forty-one years old. His sentences on their face do not violate Graham because Lewis was sentenced to life with parole eligibility.[3]
Lewis’s “de facto life sentence” argument fails for an independent reason. Lewis’s presumptive parole release date now stands at 2042 because of a variety of disciplinary violations committed by him while serving his sentence. In March 1983, the parole commission established Lewis’s initial presumptive parole release date as July 3, 2033 (when Lewis would be 68 years old).[4] However, just five months later, the parole commission, applying a different matrix established for youthful offenders, reduced Lewis’s presumptive parole release by 155 months-from July 3, 2033 to August 3, 2020 (when Lewis would be 55 years old).
The presumptive parole release date can also be modified (extended or reduced) based upon the parole commission’s periodic review of the conduct and behavior of the prisoner while serving his sentence. See §§ 947.172-174 Fla. Stat. (2013). In Lewis’s case, the parole commission on one occasion reduced his presumptive parole release date by forty-eight months, based upon work performed by Lewis as an institutional barber. However, on at least twelve other occasions between 1987 and 2011, the parole commission extended Lewis’s presumptive parole release date (in varying amounts) based upon disciplinary violations committed by Lewis during his sentence.[5] These modifications, a result of Lewis’s own conduct in prison, resulted in a total of 324 months’ time (twenty-seven years) added to his presumptive parole release date.
Thus, Lewis received precisely what Graham requires:
— No determination at the outset of the sentence that Lewis would never be released from prison;- and
— No guarantee of eventual release, but rather a “meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation.”
The trial court properly denied Lewis’s motion for postconviction relief.
Affirmed.

. Neither the judgment and sentence, nor the plea colloquy, forms a part of this record.

. The defendant received sentences of fifteen and five years, respectively, on the two aggravated battery counts, to be served concurrently with each other and concurrently with the life sentences. The sentences for these offenses do not form a part of this appeal.

. For this reason, the “de facto life sentence” cases cited by Lewis are inapposite. In each of those cases, the defendant received a term-of-years sentence under the current statutory scheme, which offers no parole eligibility and requires a defendant to serve at least eighty-five percent of his sentence before he may be released. See § 944.275(4)(b)3 Fla. Stat. (2013); Adams v. State,-So.3d-, 2012 WL 3193932, 37 Fla. L. Weekly D1865 (Fla. 1st DCA Aug.8, 2012); Floyd v. State, 87 So.3d 45 (Fla. 1st DCA 2012).

. This initial presumptive parole release date was based, at least in part, on the fact that Lewis was convicted of five separate armed robberies with a firearm and received concurrent life sentences.

.The parole commission reviewed Lewis’s status at least once every two years between 1987 and 2011. At each review, the commission was made aware of any disciplinary violations committed by Lewis since the previous review. Over the course of the fourteen-year period, the parole commission referenced a total of forty-three disciplinary violations, ranging in seriousness from disrespectful conduct to possession of weapons and narcotics.