THOMAS, J.,
concurring.
I concur in the majority opinion but write to explain my reasoning. These three consolidated cases involve crimes committed in 1983 by Appellant at the age of 17. Appellant was convicted of 20 felony counts, including 17 life felony counts for armed robbery, unarmed robbery, armed kidnapping, aggravated assault, and armed sexual battery against multiple female victims, one of whom was raped ten times by Appellant and his co-defendants. The sentencing court in 1984 found that these crimes inflicted lifelong physical and mental injuries on the victims.
Citing these facts and other considerations, the trial court sentenced Appellant to concurrent parole-eligible terms totaling 1,000 years in state prison. In addition, the court retained jurisdiction over one-third of Appellant’s sentence; thus, the trial court could exercise a judicial veto over the Parole Commission’s authority to grant Appellant parole. See § 947.16(3), Fla. Stat. (1982 Supp.).
Under the United States Supreme Court’s opinion in Graham v. State, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), Appellant sought postconviction relief below in a rule 3.850 pro se motion. The trial court denied relief, but agreed to strike the original sentencing court’s retention of jurisdiction of any parole decision during the first third of Appellant’s sentence. Appellant now asserts through counsel that he is entitled to either an evidentiary hearing on his claim or resen-tencing with the appointment of counsel. Appellant claims he remains subject to a sentence imposed in violation of Graham, based on his Presumptive Parole Release Date (“PPRD”) established under Chapter 947, Florida Statutes.
It is ultimately within the discretion of the Florida Parole Commission as to whether Appellant will be released on parole. See §§ 947.002, 947.16, 947.18, Fla. Stat. (1981). Based on this eligibility for parole, Appellant’s sentence does not constitute cruel or unusual punishment under the Eighth Amendment to the United States Constitution, for the simple reason that Appellant remains eligible for parole reléase, and Graham did not hold that Appellant must actually receive parole to comply with the Eighth Amendment to the United States Constitution: “It bears emphasis, however, while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile non-homicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives.” Graham, 560 U.S. at 75, 130 S.Ct. 2011.
*214 In the first case, Appellant and a co-defendant forced their way into the victim’s car while she was at a red light, then pushed the victim to the middle of the front seat, grabbed her hair, and slammed her head to the car floorboard. Appellant drove the car to another location. When the victim attempted to escape from the car, Appellant tackled her and smashed her head against the pavement, causing the victim to partially lose consciousness. Appellant then dragged the victim across the pavement, causing a burn on her skin. Appellant and the co-defendant then drove to a secluded area where Appellant raped the victim as his co-defendant searched the car for items of value, eventually taking $200 from the victim’s purse. The victim testified at trial that Appellant choked her during the sexual assault.
At the sentencing hearing, the victim testified that the crime had ruined her life. She now lived in constant fear, could not work, could no longer engage in marital relations with her husband, and was afraid to leave her home, because the attack occurred only a few blocks from her residence. The trial court noted that during the trial and sentencing, this victim stood almost the entire time, and at the end of her testimony completely “broke down and had to be helped from the courtroom after a long recess.” The court further noted that this criminal episode was committed by Appellant and his co-defendant showing a “conscious, well thought out, premeditated intent to commit these shameful, terrorizing and demeaning acts of violence.”
In the second case, Appellant and his co-defendant robbed a convenience store, held a knife to the back of a male employee, then forced a female employee to give them her car keys. Appellant and his co-defendant then forced the victim into the car’s back seat at gunpoint and drove the victim to a secluded area. During this time, Appellant told the victim that this was not the first time he and his co-defendant had committed similar crimes and “they would never serve a single day in jail.” Appellant’s co-defendant then asked Appellant if they should “take her where they took the other one.” Appellant replied that they should “take her to the new place we found.”
The sentencing court noted that while en route to the crime scene, the “defendants told the victim that they knew her and knew she recently had a baby,” which “terrified the victim.” At the secluded area, Appellant sexually assaulted the victim while his co-defendant held a gun to her head. The two men then switched places, and Appellant held the gun “inches from the victim’s head” while his co-defendant sexually battered her. The sentencing court noted that at some point, Appellant held the gun in the victim’s ear and “told her he was going to blow her brains out.”
Both Appellant and his co-defendant then searched the victim’s car and stole jewelry from her, including her wedding ring, which the victim begged them to let her keep because it meant so much to her. After robbing the victim, one of the defendants then kicked her in the head before they stole her car and fled, leaving her “in a dazed condition until she found help.”
At sentencing, the victim testified she was hospitalized for two weeks following the assault. Two days after the crime, “her physical and emotional condition deteriorated to the point that she had lost the use of her right arm and right leg” as a result of the emotional trauma caused by Appellant and his co-defendant. The trial court’s sentencing order notes that the victim testified that “she lives in constant fear,” could not care for her infant child, and “was not even emotionally able to leave her own home for six months following the crime.” The victim’s treating doc *215 tor testified that the acts committed against the victim “will have a crippling effect on all areas of her life — for the rest of her life.” The doctor stated that the victim would need mental treatment for several years. During the sentencing hearing, the victim “shook uncontrollably during her testimony.” She was “unable to be removed from her chair because of her emotional state for about 20 minutes.”
In the third criminal episode, Appellant and two others forced their way into the victim’s car and drove to a secluded area where all three men perpetrated various acts of sexual assault on her. The men then put the victim in the trunk of the car and drove to another location, where the assaults resumed. They later carried the victim to a railroad car where she was locked up for a period of hours, after which Appellant and one other co-defendant returned, removed the victim to a waiting car, and resumed the sexual assaults. Appellant was convicted of ten counts of sexual battery in this case. The sentencing order notes that the physician who performed the sexual battery exam testified that the victim suffered the worst injuries the physician had ever observed.
In the wake of Graham, Appellant argued that his 1000-year sentence, with the court retaining jurisdiction for 333-1/3 years, was disproportionate to his offenses, and thus in violation of the Eighth Amendment of the U.S. Constitution. Appellant also argued that his sentence violated the retroactive holding in Graham, because it denied him of any meaningful opportunity to obtain release within his lifetime. Thus, he requested the trial court to resentence him with a guideline sentence and order an evidentiary hearing.
The court denied the motion as to the disproportionate sentence argument, and it declined to resentence Appellant with a guideline sentence, because that option was not available under Chapter 921, Florida Statutes. Appellant does not challenge those rulings here.
The court below agreed to strike the original sentencing court’s retention of jurisdiction of any parole decision during the first third of Appellant’s sentence: Despite this grant of partial relief, however, Appellant asserts that he is entitled either to an evidentiary hearing on his claim under Graham, or a resentencing hearing that Appellant asserts must comport with Graham, by ensuring that Appellant receives a meaningful opportunity “for release based on demonstrated maturity and rehabilitation.” In essence, Appellant asserts that the trial court should not have considered any legal arguments regarding his claim without the appointment of counsel.
The State argues that no counsel was necessary, as the arguments involved do not require a complex legal analysis. In addition, the State asserts that because it is undisputed that Appellant has been and remains eligible for parole, his sentences comply with Graham regardless of whether his PPRD is set far beyond his life expectancy.
I agree with the State on both points. Regarding the merits of Appellant’s claim, Appellant is eligible for parole, thus, his sentences do not violate the decision in Graham. See Miller v. Alabama, — U.S. -, -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012) (“We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.” (emphasis added)). Graham holds only that the State may not punish a juvenile convicted of a non-homicide crime with life in prison without the possibility of parole. Graham, 560 U.S. at 57, 130 S.Ct. 2011 (“Because Florida has abolished its parole system, a life sentence gives a de *216 fendant no possibility of release unless he is granted executive clemency.”) (citation omitted).
The State did not abolish parole eligibility for Appellant, who committed the above crimes before the effective dates of the sentencing guidelines legislation in Chapter 921, Florida Statutes. See Ch. 1984-328, Laws of Florida (effective Oct. 1,1984, and adopting court rules implementing sentencing guidelines); Smith v. State, 537 So.2d 982, 987 (Fla.1989) (holding sentencing guidelines and elimination of parole eligibility unconstitutional until date legislature adopted relevant rules, but valid thereafter, and discussing history of sentencing guidelines, noting that “the elimination of parole was an integral part of the sentencing guidelines legislation, and we are convinced it could not be severed from the statute.”). The United States Supreme Court has recognized that a life sentence with parole eligibility is necessarily a less punitive punishment than a non-parole-eligible sentence. See Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 662-63, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974) (noting that when parole eligibility is removed, an “additional penalty” is imposed).
Appellant’s sentences are parole eligible, and now that the trial court has ordered that it will no longer retain jurisdiction under section 947.16(3), Florida Statutes, the Florida Parole Commission will determine whether Appellant will be released from his 1,000-year prison term and placed on community supervision. See §§ 947.002, 947.16(4), 947.18, Fla. Stat. The sentencing court has eliminated its authority to veto that decision by retaining jurisdiction, and while I render no opinion on whether this was a necessary act to comply with Graham, the State agreed to this action below and does not challenge it here.
I disagree with Appellant’s argument that the Parole Commission has somehow calculated Appellant’s PPRD in violation of the requirements of Graham. I further note that Appellant will receive periodic reviews by the Parole Commission, at least every seven years, where additional information can be considered. See §§ 947.16(5) & 947.174(2-3), Fla. Stat. In fact, Appellant acknowledged below that he has received periodic reviews from the Parole Commission.
Appellant’s reliance on Cunningham v. State, 54 So.3d 1045 (Fla. 3d DCA 2011), for the proposition that a parole-eligible inmate sentenced as a juvenile must have a PPRD established within his lifetime, is misplaced. Although the Third District in Cunningham noted that Cunningham had a PPRD in 2026, the context of that statement was simply to observe that Cunningham acknowledged that he was in fact eligible for parole as he had a PPRD in 2026, but not to hold that the date had to be within his natural lifetime. The court there further noted that Cunningham had a review in 2013, just as Appellant will receive his reviews by the Parole Commission. Even had the Third District held that an inmate sentenced for a crime committed when a juvenile must have a presumptive parole release date within his natural life, I would respectfully disagree, for the reasons stated above. See also Atwell v. State, 128 So.3d 167, 169 (Fla. 4th DCA 2013) (holding inmate sentenced for first-degree murder not entitled to postconviction relief where crime was committed when inmate was a juvenile, but sentence provided parole eligibility after serving 25-year minimum mandatory). Furthermore, the Third District’s decision in Lewis v. State, 118 So.3d 291 (Fla. 3d DCA 2013), recognizes that an inmate sentenced for a crime committed as a juvenile has no right to an eventual release on *217 parole, where the Parole Commission has set his PPRD in 2042 based on Lewis’ misconduct in prison. And here, we cannot predict whether the Parole Commission will in fact one day accelerate Appellant’s PPRD based on good conduct, such that he may in fact be released on parole. That decision must be made by the Parole Commission and will depend at least in part on Appellant’s behavior.
I also find that Appellant’s reliance on People v. Caballero, 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291 (2012), is misplaced. There, the defendant would not become eligible for parole until serving at least 110 years, and that court found the sentence to be the functional equivalent of a sentence of life without parole. Here, Appellant has always been, and remains, parole eligible.
Because Appellant has been and remains parole eligible, with periodic review for additional consideration, his sentence comports with the Eighth Amendment to the United States Constitution. Thus, under the undisputed facts of this case and the relevant law, Appellant is not entitled to postconviction relief, an evidentiary hearing, or resentencing, because his current sentence is legal under Florida law and is constitutional under federal law.